JULIA POST SMITH, Appellant, *v.* LILA S. SCOVILLE and Another, Respondents.

First Department, April 20, 1923.

**Deeds — restrictive covenant — action to restrain use of adjoining premises as boarding house — house was not advertised as boarding house, did not receive transients and accepted only such boarders as were recommended or were personally known to some one in house — land was restricted to erection of dwelling houses only, not including tenements or community houses and specified businesses were prohibited — boarding house not within prohibited business — keeping boarders not violation of covenant.**

The use of a dwelling house as a boarding house, where the house is not advertised as a boarding house, no transients are received and only such boarders are taken as are recommended or personally known to someone in the house, is not a violation of a restrictive covenant limiting the use of the land to the erection of private dwelling houses only, not including tenement or community houses, and prohibiting the use of the land for the erection of any public or private stable, schoolhouse, coal yard and other specified businesses, and the owner of the adjoining property is not entitled to an injunction restraining the use of the house as a boarding house.

Furthermore, since there is ambiguity or uncertainty as to whether the prohibition in the restrictive covenant applies to the use of the dwelling as a private boarding house, privately conducted, the covenant will not be so construed, for a restrictive covenant, to apply, must be clear and unambiguous.

APPEAL by the plaintiff, Julia Post Smith, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 17th day of June, 1922, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the complaint upon the merits.

*Olin, Clark & Phelps* [*William G. Murphy* of counsel; *Stephen H. Olin* with him on the brief], for the appellant.

*Eustace Conway* of counsel, for the respondent Lila S. Scoville.

*Gordon, Weed & Young* [*Eustace Conway* of counsel], for the respondent Ida M. Smart.

FINCH, J.:

Plaintiff is the owner of No. 36 West Fifty-third street, New York city, and occupies the same as her residence. She sued in equity

to enjoin the use of the adjoining premises, No. 34 West Fifty-third street, as a boarding house, on the ground that such use violates certain restrictive covenants covering that property and other property in the neighborhood, imposed by a certain partition deed from which both plaintiff and defendant Scoville by mesne conveyances have derived title to their respective premises.

It appears that there is no holding out of the said defendant's house to the public as a boarding house; there is no sign thereon and the general appearance of the defendant's house is the same as that of the plaintiff's and a number of neighboring houses. No transient guests are received, but on the contrary, several of the guests have lived in the household of the defendant Ida M. Smart, who is a tenant of the defendant Scoville, for long periods of years, and no person is received who is not recommended or personally known to someone in the house. Plaintiff does not object to the construction of the house, or to the use thereof, except for the bare fact that boarders are taken. The restrictive covenants in said partition deed provide as follows:

" That they nor either of them their heirs or assigns shall or will at any time hereafter erect or cause to be erected on said several lots of land partitioned as aforesaid any buildings excepting first class dwelling houses. * * *

" And the said parties further covenant as aforesaid, that they will not erect or permit upon any part of the premises partitioned as aforesaid any public or private stable of any kind, tenement or community house, school house or public institution of any kind, coal yard slaughter house meat shop tallow chandlery, steam engine smith shop forge, furnace, brass foundry nail or iron factory or any manufactory of glass gunpowder, glue varnish vitriol ink or turpentine or any coopers carpenters or cabinet makers shop or any establishment for tanning or preparing skins hides or leather or any brewery distillery sugar or other factory or bakery or lager beer establishment, theatre, museum, opera house, circus, menagerie or public show or spectacle or drinking saloon or bar room, dance house, or place of amusement of any kind, engine house or any kind of manufactory trade or business whatsoever or any other erection known as or used or employed for purposes known as nuisances in the law."

From the foregoing, therefore, it seems clear that the intention was to restrict *first*, as to the erection of private dwellings, and perhaps to use as such, and *second*, as to the use for business purposes in the nature of a nuisance.

In the first place, it is to be noted that boarding houses, though

as well known at the time the covenant was drawn as they are to-day, were not prohibited. On this subject the only prohibition was as to tenement or community houses. Hence, the legal principle applies as expressed in the phrase, *expressio unius est exclusio alterius.*

Taking up first the latter portion of the covenant, reading: " or drinking saloon or bar room, dance house, or place of amusement of any kind, engine house or any kind of manufactory trade or business whatsoever or any other erection known as or used or employed for purposes known as nuisances in the law," it is a fair intendment that what was prohibited was any kind of manufactory trade or manufactory business whatsoever. Such construction harmonizes with the context, for if the intention was to exclude any business irrespective of its nature, of what use or purpose was it to enumerate a long list of occupations which are not the less business because they are also nuisances? Furthermore this construction is aided by the phrase " or any other erection known as or used or employed for the purposes known as nuisances in the law." Also, even if the word " business " is held to stand alone and all of the remainder of the long enumeration succeeding it is held surplusage, still under the familiar principle of *ejusdem generis* or *noscitur a sociis*, the word " business " would have to be construed in accordance with its context, namely, a public business which invites the patronage of the public indiscriminately and partakes of the nature of a nuisance. In other words, where there is an enumeration of specific things followed by a more general word or phrase, the latter should be construed to refer to things of the same kind.

Coming now to the restriction as to private dwellings, and assuming that the restriction is not only as to the erection, but as to confining the use to that of private dwellings, the words of the Appellate Division in the Fourth Department in *Smith* v. *Graham* (161 App. Div. 803; affd., 217 N. Y. 655) would seem applicable: " But it would seem to be true that a dwelling, so long as it is used as such, may be also used as a place for carrying on some kinds of business provided such business is of such character as to be no inconvenience to neighboring property holders." As above noted, there is no contention in this record that the taking of boarders in any way was a nuisance or an inconvenience to neighboring property.

The foregoing construction of the covenant, moreover, is fortified by what these same parties said of this covenant in a subsequent agreement a year later, when they twice formally referred to it in the following manner: " did make and agree to and enter into

certain covenants, agreements and provisions and restrictions as to *building on said land* and as to *nuisances* which were to be taken and considered as covenants real running with the land as will more fully appear by reference to the said deed * * * and do hereby alter and modify the covenant provisions agreements and restrictions as to *buildings* and *nuisances* of said deed of partition." (Italics not on original.)

In this same subsequent agreement appeared also this paragraph: "It being, however, hereby mutually understood covenanted and agreed that the erection of a first class private dwelling or private residence on any of the said lots or lots included in the said plot or piece of land above described shall be taken and held to be a compliance with the requirements covenants and provisions contained in the said deed of partition so far as relates to such part of the said lot or lots included in the said plot or piece of land above described as is occupied by the said first class private dwelling or private residence and the land adjoining and connected therewith as a garden or ornamental grounds," which gives some grounds for holding that the covenant in question only relates to building and not to use. Even assuming that the following paragraph: "It being hereby however further mutually understood and covenanted and agreed that no private or other stable is to be considered as permitted by this agreement and that this instrument is not intended to consider or permit the use of any of the said lots included in the said plot or piece of land above described for any other purpose than a private dwelling or private residence until the time limited for the expiration of the whole of said covenants and restrictions on the 18th day of November, 1898," limits the use, still this use would be limited to private dwellings or residences, and, as shown, this comprises such businesses as are not objectionable or inconvenient to neighboring property. (*Smith* v. *Graham, supra.*) *Cromwell* v. *American Bible Society* (202 App. Div. 625), relied on by the appellant, as the opinion shows, related to a case where the lessee "contemplates wholly abandoning the use of the building as a dwelling house, and intends using it exclusively for business purposes."

In arriving at a decision in this case, however, it is only necessary to find that there is an ambiguity or uncertainty as to whether the prohibition claimed by the plaintiff exists, since a restrictive covenant, to apply, must be clear and unambiguous. This principle is in accordance with the authorities and with the common judgment, since, if the creator intended the covenant to apply, it would have been simple and easy and have involved only the use of an additional word or two to so state. (*Matter of City of New*

*York,* 209 N. Y. 344; *Land & Lake Assn.* v. *Beardsley,* 182 App. Div. 550; *Inter City Realty Co.* v. *Newman,* 128 id. 195; *Gaylord* v. *Barnes,* Id. 810.)

Since the foregoing was written the Court of Appeals has decided the case of *Baumert* v. *Malkin* (235 N. Y. 115). That case does not affect the decision herein, since the property therein referred to " is restricted so that the buildings to be erected thereon shall be first class private dwellings designed for the use of one family only." The court held that a violation was had by conducting a music school, which, it was alleged, resulted in disturbing the " peace, quiet and comfort " of the neighborhood through the commission of " disturbing, objectionable and discordant sounds and noises arising from vocal and instrumental practice and tuition," which concerts " have caused great throngs of people to gather in and approach said premises." The limitation to a private dwelling for one family is different from a limitation to private dwellings. In the latter case there is no breach of the covenant by using the premises as a dwelling for more than one family, provided such persons are not taken indiscriminately from the public but are personally known or recommended. It is still a dwelling, and still private. Moreover, this is reading the covenant as strongly as possible for the contention of the defendant, for, as pointed out, there is much to hold that the covenant only is directed against using a dwelling so as to be an inconvenience to the neighborhood.

It follows that the judgment should be affirmed, with costs.

CLARKE, P. J., DOWLING, PAGE and MERRELL, JJ., concur.

Judgment affirmed, with costs.