JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY
v. DAVIS.

*E. V. Carter,* for plaintiffs in error.

*Anderson, Rountree, Crenshaw & Hansell,* contra.

PER CURIAM. This case presents only one question to be decided by this court; and that is, whether or not the operation of a boarding-house is in violation of a covenant in a deed reading as follows: "Said land shall not be used otherwise than for residence purposes, and shall not be used for a sanatorium, hospital or infirmary, and no apartment-house shall be erected thereon." *Held,* that the operation of a boarding-house is not in violation of the covenant quoted above; and the court erred in granting an injunction in this case, which could only be based upon the conclusion that the operation of the boarding-house referred to was in violation of the covenant.

*Judgment reversed. All the Justices concur, except*

BECK, P. J., dissenting. J. D. Davis Jr. brought his petition against John Hancock Mutual Life Insurance Company and Mrs. T. E. Edwards, and prayed for injunction to restrain the company from renting certain property for any purpose in violation of a restrictive covenant in a deed limiting the use of the property in question to residential purposes. He sought also injunction against Mrs. Edwards, the tenant of the company, to restrain her from operating a boarding-house on the premises. Davis purchased a house and lot in Druid Hills, Atlanta. The insurance company was the owner of the house and lot next to that of Davis, and rented the same to Mrs. Edwards for a period of two years. She was operating the house as a boarding-house. The premises occupied by Mrs. Edwards fall within the provision of a covenant in a deed from a former owner from whom title to the property is derived. The covenant referred to is as follows: "Said land shall not be used otherwise than for residence purposes, and shall not be used for a sanatorium, hospital or infirmary, and no apartment-house shall be erected thereon." And the only question presented for consideration in this record is whether or not the operation of a boarding-house is in violation of the covenant just quoted. The court below held that it was, and granted the injunction.

When one purchases a house and lot in a residential section, a section that can be used for residential purposes only, it is evi-

dently his purpose and desire to obtain some degree of quiet and privacy. The resident living in the suburbs of a busy city can not enjoy all the quiet and the privacy which is enjoyed by a resident in the rural districts; but by contract, or by making purchase of a house and lot in a district which by restrictive covenants is devoted entirely to residential purposes, he may secure some part of the coveted privilege of living in quiet and privacy. If one makes purchase of a lot of land contiguous to a lot falling within a restrictive covenant like that quoted above, it is evidently in contemplation by the purchaser—and the vendor himself must also understand it—that he is seeking and expecting some quietude and protection from the noise, bustle, and confusion which necessarily surrounds business places and places where men gather together for trade or can gather in crowds and indulge in loud and disturbing talk and conversation. The enjoyment of rest and quiet after a busy day in a great city is a great privilege. It is a restorative of strength for the next day's struggle; and these are the considerations that make covenants in deeds like the one we are considering a thing of value and a thing which confers rights that may be enforced in a court of equity. The building in which Mrs. Edwards conducted a boarding-house, as we have seen, was restricted in its use to residential purposes, and could not be used otherwise than for such purposes. Mrs. Edwards in her affidavit shows that she has nineteen boarders. If one in face of a covenant like that under consideration is operating a boarding-house where nineteen or twenty boarders could be accommodated, the covenant could scarcely be applied to prevent the operation of a boarding-house with rooms enough to house and accommodate an hundred or more boarders. And with a boarding-house like that on a lot immediately contiguous to the lot of the purchaser who sought some degree of privacy, his object in making the purchase would be entirely destroyed; and in this case he is entitled to protection under the deed to his own property and the deed conveying the contiguous property on which the boarding-house in question is located.

I am not unmindful of the rule that restrictive covenants are to be strictly construed; and the largest possible use of property falling within the restrictive covenants is to be accorded to the owners of the property. But, with that principle before me, I can reach

no other conclusion in this case than that the operation of a boarding-house was in violation of the restrictive covenant. The operation of a boarding-house is a business. It is generally recognized as such. In the charter of the City of Atlanta there is a section of it which allows the city to regulate and "in its discretion prohibit the erection and maintenance of sanitariums, boarding-houses, and other similar places in residence portions of the city." This is quoted from § 426 of the Code of the City of Atlanta, and that is taken from the charter of the city.

Other courts have dealt with the question which we have before us. In Sayles v. Hall, 210 Mass. 281 (96 N. E. 712, 41 L. R. A. (N. S.) 625, Ann. Cas. 1912D, 475), the Supreme Court of Massachusetts held: "A restriction in a deed limiting the building upon the premises to a 'dwelling-house to be used exclusively as a residence for a private family' is violated by the keeping of boarders and roomers to the number of twelve at a time upon the premises." And the court said: "We are of the opinion that the keeping of boarders and letting of rooms to the extent set forth in the agreed facts is a violation of the restriction in the defendant's deed." In the note to the decision last referred to are collected a number of cases in which the same question is considered and discussed. In Trainor v. LeBeck, 99 N. J. Eq. 673 (134 Atl. 355), the Court of Chancery of New Jersey held as follows: "Taking in guests who paid proportionate cost of their living expenses, though not use of premises as inn, tavern, or boarding-house, held violation of restriction requiring use of premises for single dwelling-house exclusively." The Florida Supreme Court said, in a case before it: "The word 'residence' is one of multiple meaning, but the context in which it is used in this instance clearly indicates its meaning to be a dwelling-house where a person lives in settled abode. The word, in this instance, relates solely to the use or mode of occupancy to which the property may be put. . . When so employed and understood, it necessarily excludes all uses of the property other than for residence purposes, and the interposition of other negative terms specifically prohibiting the use of the property for business, mercantile, or other similar purposes are unnecessary." Moore v. Stevens, 90 Fla. 879 (106 So. 901, 43 A. L. R. 1127). It may be remarked in reference to this last case that the question was as to whether a vocal studio could be maintained in violation of a

restriction in a deed limiting the use of the property to residential purposes only; and I have quoted it here to illustrate the court's understanding of the meaning of the word "residence." Other decisions than those from which the above quotations are taken might be cited. Several of them are cited in the note to the first case to which reference is made. There are cases in which the court rendering the decision seemed inclined to take a different view from what I have announced; but it seems to me that the court below in granting the injunction took the sound view of the principles applicable to the question involved here. For the reasons stated above, I am compelled to dissent from the judgment of the majority of the court.