JESSE ANDREWS, JOSEPH M. BERNARDIN, JOSEPH H. S. HEIM, J. H. BATCHELOR, MRS. GUY M. COWGILL, MRS. EDWARD L. FOUTCH, ALEX C. GREEN, MRS. EDITH E. JENKINS, LEX MCDANIEL, WILLIAM B. SCHNEIDER, MRS. ANNA TSCHUDY, FRANK E. TYLER, MRS. LUCY THOMPSON WILLOCK, RUBY D. GARRETT, WENDELL H. CLOUD v. METROPOLITAN BUILDING COMPANY and MARIE HARDEN, Appellants.—163 S. W. (2d) 1024.

Division One, July 1, 1942.

Rehearing Denied, July 28, 1942.

Kenneth W. Tapp and Alfred M. Seddon for appellants.

928

*Wendell H. Cloud* for respondents.

DALTON, C.—Action to enjoin alleged violation of restrictions against the use of certain property in Janssen Place addition in Kansas City for other than residence purposes. The owner by a cross action sought injunctive relief against plaintiffs' interference with its tenant's present use of the property. The trial court found for plaintiffs on the petition and cross action and granted the injunctive relief as prayed by plaintiffs. Defendants have appealed. We have jurisdiction since, according to the uncontradicted evidence, the property as now used has a value of $15,000, but its value will not exceed $6,000 if the restrictions are construed and enforced as contended for by plaintiffs. [Hall v. Koehler, 347 Mo. 658, 148 S. W. (2d) 489, 490; Art. 6, Sec. 12, Constitution of Missouri and Amendment of 1884, Sec. 3; Sec. 2078, R. S. 1939; 4 Mo. Stat. Ann., p. 2587, sec. 1914.]

Plaintiffs are the owners of nineteen lots (15 separate properties) in Janssen Place. Defendant Metropolitan Building Company (hereinafter referred to as defendant company) is the owner of a lot

in said addition. A residence and garage building are located on the lot. Defendant Marie Harden is the tenant of defendant company and is occupying and using the described premises.

Janssen Place, located between Locust and Holmes Streets and just south of 36th street in Kansas City, was platted and the plat filed in 1897. The addition comprises 32 lots, numbered from 1 to 32 inclusive. The lots range from 75 to 100 feet in width and from 188 to 262 feet in depth. The lots face east or west on a 100 foot center parkway, extending from north to south, and containing driveways, parkways, walkways and ornamental plots, which are maintained at the expense of the property owners. The parkway is held in trust by trustees for the lot owners and has not been formally dedicated to public use, but a south entrance has been provided and connections made with Gillham Road. Originally the only entrance was from 36th street. The public is permitted to use the driveways in exchange for the maintenance by the city of street lighting in Janssen Place. A total of 19 large substantially constructed residences have been built and the majority were built shortly after the opening of the addition. All but two of the residences are occupied by their owners. There have been few changes in ownership of the respective properties, and for the most part these changes have been occasioned by the death of those who built the houses. The evidence shows that Janssen Place is a high class residence district and has long been maintained as such.

The deeds to the respective lots, made subsequent to the date of the plat, contain very detailed restrictions concerning the type and kind of improvements permitted and the use of the properties. The restrictions originally extended for a 20 year period, but provision was made for extension of the restrictions and they were subsequently extended to 1930 and thereafter to 1945. All restrictions are now in full force and effect, except for modifications as to a lot not here involved.

We are particularly concerned with only one of the restrictions, to wit, "that said land shall be occupied and used by said second party, its assigns, including all tenants for residence purposes only, and not otherwise." Another restriction provided that there should not be at any one time "more than one residence or dwelling house on any lot in Janssen Place." The other detailed restrictions are too extensive to be set out in this opinion.

The deeds to the various purchasers of lots in Janssen Place also referred to the trust deed covering the center parkway. This trust deed with its several provisions was incorporated by reference as fully as if set out in the several deeds to lot purchasers. It authorized and empowered the trustees to lay out, construct and maintain streets, pavements, sidewalks, parks and ornamental grounds and pay for same by assessments against the respective lots in Janssen Place.

The trust deed further authorized the trustees "to permit, suffer and allow the owner or owners of the said 32 lots, or any part of them with their respective families or the tenants under them and their respective families, from time to time to have free ingress and egress to and from such parts or either of them and to frequent, use and enjoy the same as a place of common resort and recreation under and subject always to such rules and regulations as the said trustees shall from time to time make, establish and prescribe, . . . to permit, suffer and allow the owner or owners of said lots or any of them or any part of them, with their respective families, or the tenants under them and such other persons as they may direct, to have free ingress and egress to and from any of said lots by means of said driveways and sidewalks." And further provided, "that the right and privilege to frequent, use and enjoy the before described driveways, sidewalks, parks and places, shall be an easement attached to each and every one of the said 32 lots of land, and passing as appurtenant thereto, and to be had, held and enjoyed in manner aforesaid by the owners from time to time of the said respective lots, and their respective families occupying the same, provided they shall make the annual payments before provided for, and observe such regulations as aforesaid, but not otherwise."

Defendant company acquired its property by foreclosure in 1932, but subject to the same restrictions as other lots in said subdivision. The streets, sidewalks, parkways and ornamental plots have been constructed and are still maintained. Caretakers look after flowers and shrubbery and wash the walks and roadways. In winter the snow is cleaned from the walks. The expense is paid by assessment against the property in Janssen Place. Defendant company has paid the assessments on its property.

The improvements on the lot owned by defendant company consist of a large three story residence and a garage. The residence contains four sleeping rooms and two sleeping porches on the second floor, and six sleeping rooms on the third floor. The garage has accommodations for three automobiles and an apartment on the second floor consisting of a livingroom, two bedrooms and a bath. Defendant company rented the property to defendant Harden in October, 1938. Previous to that time the property had been vacant for several years, and a caretaker, who lived in the garage apartment, had been in charge of the premises.

Mrs. Harden was a widow. Her family consisted of her mother, her daughter and herself. Immediately prior to renting from defendant company, Mrs. Harden had operated a boarding house known as the Ross place, at 501 East Armour boulevard. She took some of her roomers from the Armour place to Janssen Place. It was necessary for defendant Harden to support and maintain herself and family and she had been doing it "by running a boarding and room-

ing house." She rented the place from defendant company for that purpose, since otherwise she "could not have paid the overhead alone." She thought that defendant company's vice-president knew that she was intending to take in roomers and boarders. Some interior changes were made in the residence after defendant Harden took charge and she was able to accommodate eleven "guests" on the second floor, nine on the third floor and three in the garage apartment. Mrs. Harden, her daughter and mother had a sleeping room on the first floor. In the diningroom were two tables with seats for 22 or 23 persons.

Mrs. Harden preferred to refer to her boarders and roomers as "permanent guests" or "paying guests," or as persons holding responsible positions, who visited and ate together and enjoyed a home-like atmosphere. At the time of the trial she had some 18 to 21 "permanent guests" who paid compensation for room and board. Most of the "guests" took two meals per day with Mrs. Harden. There were no signs about the place and most of the "guests" were secured on blind adds or "upon personal recommendation of other guests." Mrs. Harden conceded her place was "a boarding and rooming house, if that is what you call it." Meals were served only to those who resided in the house and garage apartment, save for one exception, and not to the public generally. "Guests" could invite friends or relatives for a meal by prior arrangement and on payment therefor. Nine of the "guests" had automobiles.

The court found that the restrictive covenants in the deed, under which the defendant company held title to the property, prohibited the use of the property for the operation of a rooming and boarding house, such as was being operated thereon by Mrs. Harden, and that the use of the property for a rooming and boarding house was a business purpose. Defendant company was enjoined from renting to defendant Harden or any other person for such purpose and defendant Harden was enjoined from operating a rooming and boarding house on the premises. Both defendants appealed.

Appellants contend that the court erred in holding that the use of the property by defendants constituted a business purpose or a violation of the existing restrictions. Appellants' position is that the use being made of the property "is directly and solely a residence use, for it is the home and residence of Mrs. Harden and her mother and daughter, and every occupant who takes room and board makes it his home and residence, where he lives and eats and sleeps;" that the property "is used by all the occupants as a place to live, or for 'residence purposes;'" that "there has been no violation of the restrictive covenants expressed and set forth in the various Janssen Place deeds and other instruments of conveyance;" and that "there is no clear and unambiguous covenant or restriction

in any of the Jansen Place deeds or conveyances against the renting of rooms for residence purposes."

It is apparent that appellants concede the property is subject to restrictions, but the question is whether defendant Harden's use of the property violates the restrictions. If the intention of the parties to the deed containing the restrictions is clearly expressed the intention controls. "All courts profess to give effect to the plain intention of the parties in imposing such restrictions." [Sanders v. Dixon, 114 Mo. App. 229, 253, 89 S. W. 577.] We determine intention from the language used, and in the light of the entire context of the instrument containing the restrictions. [Kenwood Land Co. v. Hancock Inv. Co., 169 Mo. App. 715, 155 S. W. 861, 863.] The intent must be gathered, not from one clause but from the four corners of the instrument. [Garrett v. Wiltse, 252 Mo. 699, 161 S. W. 694, 696; Pierce v. St. Louis Union Trust Co., 311 Mo. 262, 287, 278 S. W. 398, 407.] Accordingly, we must read the particular restriction in controversy in the light of all other detailed restrictions set out in the deed, together with the provisions of the trust deed which was incorporated by reference therein. If there is no ambiguity, there is no room for construction, and we must give effect to the plain language of the instrument under consideration. [Porter v. Johnson, 232 Mo. App. 1150, 115 S. W. (2d) 529, 533.] It must be remembered that restrictive covenants "being in derogation of the fee conveyed by deed, such covenants will not be extended by implication to anything not clearly expressed in them, and if there be ambiguity in the terms of the covenant, or substantial doubt of its meaning, such ambiguity should be resolved, if reasonably it can be, in favor of the use complained of." [Mathews Real Estate Co. v. National Printing &. Engraving Co., 330 Mo. 190, 48 S. W. (2d) 911, 913; Breadon v. Paugh, 330 Mo. 127, 48 S. W. (2d) 853, 855; Zinn v. Sidler, 268 Mo. 680, 689, 187 S. W. 1172; Charlot v. Regents Merc. Corp. (Mo. App.), 251 S. W. 421, 423; Missouri Province Educational Institute v. Schlecht, 322 Mo. 621, 15 S. W. (2d) 770, 773; Gardner v. Maffitt, 335 Mo. 959, 73 S. W. (2d) 604, 607.] But, "when covenants in the nature of restrictions on the fee are reasonable and within the policy of the law, they are valid." [Kenwood Land Co. v. Hancock Inv. Co., supra (169 Mo. App. 715, l. c. 722).] We think it is clearly apparent from a reading of all of the restrictive covenants contained in the deed that they were made for the purpose of creating and maintaining a first class residence district and that it was the clearly expressed intention of the parties, as disclosed by the terms of the deed, to limit the use of the property to strictly residence purposes to the total exclusion of all business or commercial use. In other words, the parties expressed an intention to devote the land in question to residence purposes only in con-

tradistinction to business uses and aptly described the designated use to which the property in Janssen Place was to be devoted.

In the case of Hall v. Koehler, supra, this court had occasion to consider restrictions to the effect that "none of the lots" there involved should "be improved, used or occupied for other than residence purposes. . . ." In that case the tenants were operating in a residence building thereon a kind of eating place which was licensed as a restaurant. By answer the tenants alleged that they occupied the premises as a residence and that incidental to their occupancy of the premises as a residence they operated a chicken dinner and eating place on the ground floor. In ruling the cause this court said: " 'The law favors the free and untrammeled use of real property. Restrictions in conveyances on the fee are regarded unfavorably, and are therefore strictly construed,' Mathews Real Estate Co. v. National Printing & Engraving Co., 330 Mo. 190, 48 S. W. (2d) 911, l. c. 913, 81 A. L. R. 1039, and cases there cited, but when the intention is clear the courts will enforce such restrictions. [Kenwood Land Co. v. Hancock Inv. Co. et al., 169 Mo. App. 715, l. c. 722, 155 S. W. 861.] As to whether or not the incidental use, for business, of a dwelling, the use of which is restricted to dwelling purposes, violated the restriction depends upon the wording of the restriction and the kind of business to which the dwelling is put. [14 Am. Jur., p. 622, Sec. 214.] The wording of the restriction here concerned is plain, hence there is no room for argument in that respect. . . . While the law favors the 'free and untrammeled use of real property,' yet restrictions thereon cannot be and are not to be disregarded. A provision in a trust agreement restricting lots to business or residence purposes prevents use of the lots for school purposes. [Britton et al. v. School District et al., 328 Mo. 1185, 44 S. W. (2d) 33.] And where use is restricted to school purposes, the property may not be used for residential purposes. [Peters et al. v. Buckner, 288 Mo. 618, 232 S. W. 1024, 17 A. L. R. 543.]" [148 S. W. (2d) 489, 494.] A decree granting injunctive relief was affirmed.

Appellants say there is no ambiguity in the language used and that "if the ordinary meaning of the language is applied, there cannot be held to be a violation of the restrictions by defendant's use of the property." We think the use of the words "said land shall be occupied and used by said second party, its assigns, including tenants for residence purposes only, and not otherwise," was a clear, definite and unambiguous prohibition against the use of the property by either the owner or tenant for the purpose of carrying on a business enterprise. The intent and purpose expressed by the words and phrases used is clear, definite and certain. On the other hand, it clearly appears from the evidence that the primary purpose of the occupation and use of the property by defendant Harden was the keeping of boarders and roomers to earn a livelihood for herself

and family. Her residence in the property was solely incidental to the business and gainful occupation there carried on, and she concedes that she could not occupy the property and pay "the overhead" without the income derived from such business. The habitual operation of a boarding and rooming house for the purpose of earning a living and maintaining one's self and family is the carrying on of a business enterprise. [See, Robbins v. Bangor Ry. Co., 100 Me. 496, 497, 62 Atl. 136, 141, 1 L. R. A. (N. S.) 963; Trainor v. LeBeck, 101 N. J. Eq. 823, 139 Atl. 16, 17; Cady v. McDowell, 1 Lansing (N. Y.) 484, 486.] There was evidence that in Kansas City a city occupation license was required of every person engaged in such business or occupation in said city in "any house where persons are furnished with either board or lodging or both, for a compensation paid or to be paid therefor, and having more than eight bedrooms for the use of guests."

In Semple v. Schwarz, 130 Mo. App. 65, 109 S. W. 633, a defendant was "enjoined and prohibited from carrying on his business as a physician at or upon the premises," which were subject to restrictions against use or occupation for trade or business of any kind whatever.

In Moore v. Stevens, 90 Fla. 879, 106 So. 901, 43 A. L. R. 1127, it was held that using a residence for the purpose of giving vocal lessons regularly as the sole means of earning a livelihood, the house being arranged for the purpose, was a violation of restrictions providing for the erection of one residence building to be used for residence purposes only.

In Deitrick v. Leadbetter, 175 Va. 170, 8 S. E. (2d) 276, it was held that conducting a tourist home in a house in a residential district was a business and that the lot was not being used for "residential purposes" only as required by a restrictive covenant. The court said: "Those who conduct taverns, hotels and boarding houses may live in them, but can it be said that they are not 'used except for residential purposes?' "

In Carr v. Trivett, 24 Tenn. App. 308, 143 S. W. (2d) 900, the operation of a tourist home by using four rooms of an eight room house in a restricted residential district was held a "use of property for 'the purpose of any trade, manufacture or other business' " and within the restrictive covenants contained in defendant's deed prohibiting the use of the property for other than "residential purposes."

In Dingeman v. Boerth's Estate, 239 Mich. 234, 219 N. W. 239, it was held that running a rooming house or lodging house was clearly a business venture and contrary to the intent and purpose of restrictive covenants limiting the use of the property to "residence purposes only."

In Linwood Park Company v. Van Dusen, 63 Ohio St. 183, 58 N. E. 576, 581, it was held that the use of a dwelling house for a lodging house and the systematic renting of rooms amounting to a business,

was a violation of restrictions in a lease limiting use of the premises to "the purpose of a private dwelling or residence only, except on special permission of the company."

In the case of Baddour v. City of Long Beach, 279 N. Y. 167, 18 N. E. (2d) 18, which involved a zoning ordinance prohibiting the use of plaintiff's property for business purposes, the court said: "It is not unreasonable to prohibit its use as a boarding or rooming house as a business. There is nothing in the ordinance that specifically, in words, prohibits the use of the property for the keeping of roomers and boarders. But there is nothing vague or indefinite in its purpose or meaning. It prohibits the use of the property for business purposes. Construed in the light of its history, it excludes the use of the property for a boarding or rooming house."

The mere fact that defendant Harden sought to designate her roomers and boarders as "paying guests," or the fact that she considered her house a "private boarding house" as distinguished from a public place, or the fact that her "guests" were more or less permanently located does not, under the facts in evidence here, make the operation of the place any less a business. The premises are used for business purposes. It further appeared that defendant Harden had previously carried on the same kind of a business at another location and that she rented the property in question, not as a residence for herself and family, but primarily for the purpose of securing another location for her business enterprise. She brought some of her roomers from the old location to the new and advertised for, and otherwise secured, other boarders and roomers.

Appellants say that the question is whether the use by defendants is wholly unconnected with its use for "residence purposes," and they insist that the boarders and roomers are using the property for "residence purposes" and that defendant and her family reside on the premises. We are not here concerned as to whether the use made of the property by the roomers and boarders is a "residence purpose." It may be conceded that they reside at said address and that they use it for "residence purposes," but no roomer or boarder is a party to this action, which is directed against the owner and tenant. We are here concerned in determining whether the use made of the property by the tenant, with the knowledge, acquiescence and consent of the owner, is for "residence purposes only, and not otherwise." The owner contends that the use made by the tenant is not a violation of the restrictions and seeks to enjoin interference by plaintiffs. The question is whether the use made of the property, the primary purpose of the occupation, violates the restriction. The restrictive covenant expressly deals with the occupation and use by the owner, including tenants. Defendant Harden is not occupying and using the property "for residence purposes only, and not otherwise," regardless of the use the roomers may be making of the property. Her use of the

property is a business purpose, even though, as an incident to the carrying on of such business, she may reside on the premises. See, Pierce v. Harper, 311 Mo. 301, 306, 278 S. W. 410, where it was held that a boarding house was not a private dwelling house or home for the use or occupancy of one single family and that such use was in derogation of the restrictive covenants affecting the premises even though defendant and her family used the premises as a place of residence.

Appellants rely particularly on the case of John Hancock Mutual Life Ins. Co. v. Davis, 173 Ga. 443, 160 S. E. 393, where it was held that a restriction limiting the use of property to ''residence purposes'' was not violated by the operation of a boarding house with 19 boarders. In that case one judge dissented on the ground that the operation of a boarding house was a business and generally recognized as such. Apparently the case has not been followed in other states: [See Carr v. Trivett, supra.]

Appellants particularly emphasize the words ''residence purposes,'' to the exclusion of the other words in the same clause, and cite cases on the question of plural occupancy as no violation of a restriction limiting the use of property to ''residence purposes.'' Among the cases cited are the following: Charlotte Construction Co. v. Cobb, 195 N. C. 690, 143 S. E. 522; Sonn v. Heilberg, 56 N. Y. Supp. 341, 38 N. Y. App. Div. 515; Virgin v. Garrett, 233 Ala. 34, 169 So. 711, 714; Hunter Tract Improvement Co. v. Corporation of Catholic Bishop of Nisqually, 98 Wash. 112, 167 Pac. 100; Pulitzer v. Campbell, 262 N. Y. Supp. 743, 746; Biltmore Development Co. v. Kohn, 239 Ky. 460, 39 S. W. (2d) 687, 688, 689; McMurtry v. Phillips Inv. Co., 103 Ky. 308, 45 S. W. 96. Appellants further contend that a boarding house or apartment is a dwelling house. [In re Veeder, 65 N. Y. Supp. 517; Gallon v. Hussar, 158 N. Y. Supp. 895, 898; Smith v. Scoville, 199 N. Y. Supp. 320, 321, 324; Peirce v. Kelner (Pa. Sup.), 156 Atl. 61, 62; De Laney v. Van Ness, 193 N. C. 721, 138 S. E. 28, 57 A. L. R. 238, 243; Robbins v. Bangor Ry. Co. (Me.), 62 Atl. 136, 140; Hutchinson v. Ulrich, 145 Ill. 336, 343, 34 N. E. 556.] It is unnecessary to determine whether the restrictions prohibit plural use or occupancy, since plaintiffs complained of the business carried on by defendant Harden and the injunction was granted below on that basis.

We hold that the parties intended to provide for a high class exclusive residence district and to prohibit expressly the operation of a business upon the premises or the use of any part of said premises for a business purpose, and, therefore, that the operation of a boarding and rooming house, as conducted by defendant Harden, was a clear violation of the restriction. This clearly appears from the language used in the particular restrictive covenant, especially when considered in the light of the entire context of the deed, as well as of

the surrounding circumstances shown by the detailed provisions of the deed including the terms of the trust deed referred to and incorporated by reference. We further hold that the particular restriction, limiting the use of the property by the owner or tenant to residence purposes, was a reasonable and valid restriction and, under the circumstance here shown, may be enforced by the granting of the relief prayed.

The judgment is affirmed. *Hyde* and *Bradley*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.