Benno C. GIESEKE (Plaintiff), Appellant,

v.

L. Ross DOYEL and Valla E. Doyel, his wife (Defendants), Respondents.

No. 29456.

St. Louis Court of Appeals.

Missouri.

May 15, 1956.

of the defendants' lot was raised in violation of a restrictive covenant governing a subdivision wherein the lots lie. From a judgment for the defendants the plaintiff prosecutes this appeal.

The petition alleges that the plaintiff is the owner of a lot adjoining a lot owned by the defendants in a subdivision known as City View Place in the city of University City, Missouri. It is alleged that the subdivision was platted and laid out in blocks by the Davis Realty and Development Company who originally owned the land. It is further alleged that the lots were sold to the parties to this action and others subject to certain restrictive covenants which were binding upon the purchasers and their successors in title. One of the provisions of the restrictive covenant was that the grantee would not at any time raise the grade of any lot more than the grade "established or to be established" by the grantor. It is alleged that the defendants filled their lot so that the grade was raised one foot in the front to about five feet in the rear and that the fill obstructed plaintiff's view and caused water and mud to run down upon his property. The petition concludes with a prayer to compel the defendants to remove the fill and to restore the lot to its original grade.

The defendants admitted most of the allegations of the petition, stating that they had erected a residence upon their lot and that they had raised the grade, but they denied that there existed an established grade for the lot, and alleged that the grading done was not in violation of any restrictive covenant.

The evidence for the plaintiff consisted of his own testimony and that of an engineer who had laid out the subdivision for the Davis Realty and Development Company. There was also introduced a number of photographs showing the defendants' lot after the construction of their house.

The engineer testified that he was employed in 1916 or 1917 to survey, grade and prepare a plat of the subdivision. At that time the land consisted of a rough, uneven area and he proceeded by making a contour

Marvin E. Boisseau, University City, for appellant.

Arnold Just, St. Louis, for respondents.

WOLFE, Commissioner.

This is an action for a mandatory injunction wherein the plaintiff seeks to compel the defendants to remove a fill from their lot. It is contended that the grade

map to determine how much earth was available to even out the low spots and establish uniform slopes. He predetermined a grade for the streets and lots which sloped down toward the rear to the bank of the River des Peres. He stated that he had recently looked at defendants' lot and that it was higher in the rear than the plaintiff's lot. He was not certain that the grade of plaintiff's lot was the same as the subdividers had left it as some of the land was filled and the filled portion may have settled. At the time he was working on the project he prepared a topographic map showing the grades but it had never been recorded and he had later destroyed it. There was no topographic map on record. He said that the surface level prior to the filling in done by the defendants could be determined by digging down around the trees in their yard.

Plaintiff testified that he had purchased his lot in 1919 and that at that time the lots were all graded but the streets were not yet made. He said that he built his house upon the grade of the lot as it was at the time he purchased it and that he had maintained the same grades since. When he built he used the soil from the excavation to level off around his house and to fill in holes. He stated: "When I bought that a lot of people said I was crazy to have that hole, and I said that's all right. * * * Because I wanted it that way for a garden." He said that the lot belonging to the defendants had the same general slope as his. He stated that in 1955 the defendants built their house and made an excavation for a basement that was too near to the street and that they were obliged to move it back and do further excavating. All of the soil taken out was spread upon the rear of the lot and the front part of the original excavation was filled by hauling in earth. He said that on two occasions clay mud had washed into his yard but that it took a real downpour to cause this.

There was not much variance between the defendants' testimony and the testimony of the plaintiff. Doyel stated that his lot had been filled in some places by soil taken from the excavation and that at one point

it was about 3½ or 4 feet higher than the adjoining portion of plaintiff's lot. He said that it was lower than the plaintiff's lot in the rear. The fill where it adjoined the plaintiff's ground was rounded on top and sodded.

One of the lot owners testified that during the existence of the W.P.A. a new channel had been dug for the River des Peres, and that he and others had some of the soil taken from the excavation and put on their lots to fill in low places.

All of the deeds by which the purchasers took title to the lots sold to them by Davis Company contained the following restriction: "That neither said Grantee, nor any person or persons claiming under said Grantee shall, or will at any time raise the grade of any lot or lots herein conveyed more than the grade established, or to be established by the Grantor, its successor, successors or assigns for said lot or lots."

The plaintiff rests his case upon the above restriction and claims that because of it the defendants had no right to fill in their lot in the manner in which they did. The matter must rest upon a determination of the meaning of the words "grade established or to be established by the grantor". As to the words "to be established", it certainly could not be contended that the grantor, after having laid out and graded the subdivision, was retaining a right to reenter and change the grade of the lots. The lots were sold and the buyers built upon and landscaped their property. The phrase "to be established" was probably put in the deeds that conveyed lots before the grading was done and the form of the deeds used was left unchanged in subsequent transfers. In any event that part of the clause is of no importance except as it may assist in determining the meaning of "established grade". The appellant contends that the grade was established when the property was scraped and filled, and the respondents maintain that such a construction is too vague and uncertain, and that the grade could only be established by the engineer's contour map, showing the grades and levels. We are cited to some

cases but none of them has to do with restrictions in deeds respecting the grade of the property sold, nor do they appear to be analogous to such a situation.

■ It is said in 30 C.J.S., Establish, p. 1229, that the term establish "in common language, has various meanings, and the peculiar sense in which it is used in any sentence is to be determined by the context; and indeed, it has been said that on few words could there be more room for argument than on this. * * * In its primary sense, it has been defined as meaning to bring into being, create, or originate; to form, make, or model; to build or erect". This general definition of the word seems applicable to the situation before us, and the meaning of the words as they were most probably accepted by the parties was that the grading done by the grantor established the grade. The word "grade" therefore remains to be considered. Its usual meaning as a noun is "The line of inclination from the horizontal". 38 C.J.S., Grade, p. 972. In applying this definition to the facts before us, "it must be remembered that restrictive covenants 'being in derogation of the fee conveyed by the deed, such covenants will not be extended by implication to anything not clearly expressed in them, and if there be ambiguity in the terms of the covenant, or substantial doubt of its meaning, such ambiguity should be resolved, if reasonably it can be, in favor of the use complained of.'" Andrews v. Metropolitan Bldg. Co., 349 Mo. 927, 163 S.W.2d 1024, 1028; Chiles v. Fuchs, 363 Mo. 114, 249 S.W.2d 454; Missouri Province Educational Institute v. Schlecht, 322 Mo. 621, 15 S.W.2d 770.

■ With these guides for construing the phrase, it means no more than that the grantee will keep the general slope or line of inclination unchanged, but it cannot mean that he will preserve every contour of the lot and that he cannot fill in holes or low places. This appears to be the logical construction of the phrase employed. It is, of course, true that every time an excavation for a house was made upon a lot the grade was to some extent changed. It was, however, the accepted and known practice to spread the soil from the excavation on the remaining surface of the lot or some part of it, and the obvious purpose of the covenant was to create a uniform slope for the subdivision lots insofar as this was possible on such irregular terrain. The photographs in evidence do not indicate that this purpose was defeated by the defendants. In fact the only high part of the fill is next to the sunken garden of the plaintiff, which, according to his engineer witness, may have settled to its present level.

It appears that the judgment of the court below was for the right party, and it is the recommendation of your Commissioner that it be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

ANDERSON, P. J., RUDDY, J., and SAM C. BLAIR, Special Judge, concur.