## Spensley vs. Valentine, City Clerk, etc.

Easement: Assessment of Land for Taxation. (1) *Easement appurtenant to land affects its taxable value.* (2) *Easement in gross does not affect taxable value of grantee's land.* (3) *Easement never presumed to be in gross.* (4–6) *Case stated: Easement held to be appurtenant.*

1. A deed to plaintiff grants certain lots of land, "together with the perpetual right to draw from the pond through the head race on the north end of said lots, and use, 800 square inches of water under a four foot head * * said water to be measured at the gate when the water is let on the wheel." *Held,* that if these words mean that the water is to be drawn at some point on the north line of said lots, then the *easement* is *appurtenant to the lots,* and is to be considered in assessing their *value for taxation.*

2. If said grant be construed as giving the grantee the right to draw water at any point in the head race, without regard to the lots, it creates an *easement in gross* — a mere personal right — and is *not* to be considered in assessing the value of the lots for taxation.

3. An *easement* is never presumed to be *in gross,* when it can fairly be construed to be *appurtenant* to some other estate. This rule would probably require the easement here to be held appurtenant to plaintiff's lots, upon the language of the granting part of the deed above stated.

4. There is a further covenant in the deed that the grantee, his heirs and assigns, will pay a portion of the expense of keeping the dam and race in repair, and that, in case of their failure to do so, the grantor, his heirs or assigns, shall "have the right to enter upon the *above described land,* and into any buildings which may be erected *thereon,*

and to shut off from *said land* all of the water hereinbefore mentioned, until such *pro rata* payment shall be made, and for that purpose and no other all water gates which may be constructed *on said lands* are hereby declared to be the property of the parties of the first part," etc. *Held*, that these words show conclusively that the easement granted is *appurtenant* to the land conveyed.

5. The facts that the lots are unimproved, and that the head race is not constructed to them, do not change the character of the easement, the grantee having the right to construct the race to said lots, and to use thereon the water granted.

6. Said conveyance was given in satisfaction of two mortgages, in one of which the same amount of water was granted as *appurtenant to two of the lots*, and the other conveyed the third lot *without including any water privilege*. *Held*, that the extent and character of the easement are fixed by the *final conveyance*, and are not affected by the mortgages.

CERTIORARI to the Board of Review of the City of Janesville.

This is a *certiorari* to remove into this court the proceedings of the board of review of the city of Janesville in the matter of the assessment for taxation, in the year 1873, of certain lots of the plaintiff in error, situated therein. For satisfactory reasons, the writ was allowed to be issued from this court. The lots in question are lots 147, 148 and 149 in Miltimore's addition to said city, according to the recorded plat thereof, and the same were conveyed to the plaintiff in error by A. Hyatt Smith and his wife, and one Mead, trustee of the latter. The grantors, in and by such conveyance, granted, bargained, sold and conveyed to the plaintiff in error, and to his heirs and assigns forever, the above mentioned lots, "together with the perpetual right to draw from the pond, through the head race on the north end of said lots, and use, 800 square inches of water drawn under a four feet head, * * * said water to be measured at the gate when the water is let on the wheel." This deed was given in satisfaction of two mortgages theretofore executed by the same grantors to the plaintiff in error, one on lots 147 and 148 and the same water right conveyed as aforesaid, and the other on lot 149 without any water right.

The water power, a portion of which was thus granted to the plaintiff in error, was created by a dam across Rock river in said city, erected by virtue of an act of the legislature passed in 1848, which authorized A. Hyatt Smith and Ira Miltimore and their associates, successors and assigns, to erect and maintain such dam, to make use of the water in said river for propelling any kind of machinery they might see fit to erect, and to sell or lease the right to use said water to any person whomsoever.

Miltimore's addition, in which the lots in question are situated, extends along the northerly side of the river (which there flows in a southwesterly direction), from a point above the dam to a point some considerable distance (perhaps one-half of a mile) below the dam.    Extending from the dam, through such addition, to the west side, are two reservations marked upon the plat thereof, one for a head race and the other for a tail race, although the latter seems to be mostly in the natural channel or limits of the river.    The lots in question adjoin each other, constituting together but a single tract of land, and the same abut on the head race on the north and the tail race on the south.    They are located sixty rods or more below the dam, and are entirely unimproved.    The head race is not excavated to them, but is excavated from the dam to the lots adjoining them on the east (lots 145 and 146), on which there is a mill propelled by water drawn from such race.

It was proved before the board of review, and not disputed, that the value of lots 147, 148 and 149, exclusive of the water right or privilege owned by the plaintiff in error, does not exceed forty dollars each.    The board of review, after a somewhat extended hearing of the parties interested, decided and ordered that "the fair valuation of said lots which could ordinarily be obtained therefor, considering the water privilege conveyed therewith,    *    *    *    is $1,800, or $600 each, and the said board of review do decide and order that the valuation of said

lots be, and the same is hereby determinined and fixed at the above mentioned sums."

The plaintiff in error, by this proceeding, seeks to have such decision and order of the board of review reversed and vacated.

*Jackson & Norcross*, for the relator :

1. The act of the territorial legislature granted Smith and Miltimore the right to erect and maintain the dam and use the water for propelling machinery, and the right to sell and lease the same to any person. This created a franchise. 2 Washb. R. P., 267 ; 3 Kent's Com., 458 ; A. & A. on Corp., sec. 4, p. 737 ; *Bank v. Earle*, 13 Peters, 519, 545 ; *Jones v. Pettibone*, 2 Wis., 308, 319. This franchise is a kind of property in itself. *Wilmington R. R. v. Reid*, 13 Wall., 264, 268 ; *Conway v. Taylor's Ex'r*, 1 Black, 603, 632 ; *Lippencott v. Allander*, 27 Iowa, 460 (1 Am. Rep., 299) ; 3 Kent, 458 et seq. ; *Aikin v. W. R. Co.*, 20 N. Y., 383. The franchise could be granted to Smith and Miltimore as well as to a corporation created by the legislature. *Thompson v. R. R. Co.*, 3 Sandf. Ch., 625. By virtue of the act above named, they could sell or lease any or all of the water to any person without selling or leasing any land. The persons buying or leasing the right to use the water, could use the same on any land they desired; and the franchise pertains to the water so leased or owned, without any connection with the land upon which such water may be used. This franchise is not subject to taxation under our statutes. Tay. Stats., 397, §§ 19, 41. Taxes cannot be levied upon a franchise granted by the legislature, disconnected from all property. *B. M. Co. v. Newton*, 22 Pick., 22 ; *Lowell v. Connors*, 6 Allen, 131, 132. Our session laws contain a great number of charters granting franchises to corporations and individuals, many of which have never been used in any manner and which are not taxable. The position of the relator is that of the owner of an unused franchise. 2. If the franchise is of any value, and is the subject of taxation, it must be assessed as such, and its

value cannot be added to and assessed upon the lots. It has never been connected in any way with the lots. To be appurtenant, it must be "used with and related to, or dependent upon" the lots. 3 Washb. R. P. (3d ed.), 340; 4 Greenleaf's Cruise, 265, note; *Leonard v. White*, 7 Mass., 6. This franchise conveyed to the relator has never been used with the lots, does not relate to them, and is in no way dependent upon them. The fact that the right to draw and use water was conveyed by the same deed that conveyed the lots, does not of itself make the right appurtenant to the lots. The lots and the right to draw and use water stand in the same relation to each other as though the lots were conveyed by one or three deeds, and the right to draw water by another. A conveyance of lands adjoining the dam, and upon which no water had been used, would not carry with it any water, or any right to use water. *Linthicum v. Ray*, 9 Wall., 241; *Ackroyd v. Smith*, 70 E. C. L., 164. If there is water appurtenant to these lots, there must be water appurtenant to all of the many lots similarly situated. How is it to be apportioned among the lots? The relator cannot in any way use the water on the lots, and it will hardly be contended that a right can be appurtenant to real property, when the right cannot be used in connection with that property. Appurtenant means belonging to; incident to; pertaining to, of right. Webster; Bouvier; Burrill. This right to draw and use water, is not a "water privilege" within § 31, Tay. Stats., 400. That section relates to the right of a riparian owner to the fall in a stream in its natural state, as it passes through or along the boundary of his land. Angell on Watercourses, sec. 95 and notes.

*John W. Sale*, for respondent:

1. The assessors and the board of review, in fixing the valuation of the lots, properly took into account their advantageous location and the water privilege owned with them. Laws of 1868, ch. 130, sec. 16; Tay. Stats., 400, § 31. The question is not, whether by deed of these lots with their appurtenances the

right to use this water would pass, but whether the water privilege, in connection with the lots, should not be considered in fixing their value. The evidence shows that the lots with the water privilege are worth the sum for which they were assessed; and for the purposes of taxation the lots and their water privilege must be taken together, or a valuable property will escape taxation. 2. If a water privilege is to be assessed at all, it cannot be severed from the real estate with which it is connected, but they must be taken and assessed together. *Boston Manufacturing Co. v. Newton*, 22 Pick., 22; *Miller v. Miller*, 13 Pick., 237. 3. The water privilege conveyed and owned in connection with lots 147, 148 and 149 in Miltimore's addition to Janesville, was and is property to be assessed, notwithstanding the same may not be used by the owner thereof. *Lowell v. Commissioners*, 6 Allen, 131; *Pingree v. Commissioners*, 102 Mass., 76.

LYON, J. The testimony satisfactorily shows that the lots of the plaintiff in error, and the water power or right granted to him therewith, are worth the sums at which the lots were valued by the board of review. On the other hand, it is undisputed that, excluding such water right, the lots are not worth to exceed one-fifteenth of the valuation placed upon them by the board.

If such water right is merely a personal one — if it be only a right or an easement in gross — the value of it has been illegally included in the valuation of the lots by the board of review, and such valuation is, in that event, so largely in excess of the true value, that the proceedings of the board must necessarily be vacated and set aside. But if such right or easement is appendant or appurtenant to the lots, the assessment is valid and must be affirmed. Hence the question to be determined is, whether such water right or privilege is an easement *in gross* — a mere personal right — or is *appurtenant* to the lots of the plaintiff in error.

The language of the grant is, "the perpetual right to draw from the pond through the head race on the north end of said lots, and use, 800 square inches of water," etc. These words may mean that the point or place through which the water is to be drawn is in the north line of the lots. If this is the true construction of the grant — if, by its terms, the water must be drawn from the race on the lots of the plaintiff in error — it would seem to demonstrate that the easement is appurtenant to the lots. An easement of a way over the land of another, which terminates on the land of the owner of the easement, is appurtenant to the land of such owner. *Garrison v. Rudd*, 19 Ill., 558. The same principle seems applicable to this case.

On the other hand, the language of the grant may be construed to give the plaintiff in error the right to draw the water from any point in the head race, without regard to his lots. Were this construction to prevail, the easement is in gross — a mere personal right — in no way appendant to the lots, and not to be considered as an element of value in making an assessment of the lots for taxation.

Which of these constructions is the true one? It is a rule of law applicable to this question, that an easement in gross is never presumed when it can fairly be construed to be appurtenant to some other estate. Washburn on Easements, 29, 161. This rule would probably require us to hold the easement appurtenant to the lots, even though there were no other guide than the language of the grant itself, to enable us to ascertain its meaning. But there are other clauses of the deed which contains this grant, which show conclusively that the parties intended that the water granted should be used on the lots, and hence, that the easement is appurtenant to the lots. The deed contains a covenant that the grantee, his heirs and assigns, shall pay a portion of the expense of keeping the dam and race in repair; and in case of failure to do so, it is provided that the grantors, their heirs or assigns, "have the right to enter upon *the above described land*, and into anv buildings *which may*

*be erected thereon*, and to shut off *from said land* above described *all of the water* herein above mentioned, until such *pro rata* payment shall be made, and for that purpose and no other ; all water gates which may be constructed *on said lands* are hereby declared to be the property of the parties of the first part, their heirs and assigns." The lands referred to in the foregoing extract are the lots in question. Had the parties intended that the easement should be personal, and that the plaintiff in error should have authority under the grant to draw the water from the race at any point he pleased, the right of re-entry reserved in the deed would not have been restricted to the lots of the plaintiff in error, but would have been as broad and extensive as the grant.

The facts that the lots are unimproved, and that the head race is not constructed or excavated to them, only affect the value of the property. They do not change the character of the easement or the rule of taxation in respect thereto. The right of the plaintiff in error to construct the race to his lots and utilize thereon his right to draw water from the race, can not be successfully denied.

But it is said that, if appurtenant to any of the lots, the easement can only be appurtenant to lots 147 and 148, because it was included in the mortgage on those lots and was not included in the mortgage on lot 149 ; and that therefore the latter lot should be valued independently of the water right. We think that the extent and character of the easement is fixed and determined by the final conveyance, and is not affected by the previous mortgages; and that the same is appurtenant to the three lots by virtue of such conveyance.

We find no error in the decision and order of the board of review fixing the valuation of the lots in question, and the same must therefore be affirmed.

*By the Court.* — So ordered.