DeLANEY ET AL. v. VANNESS ET AL.

(Filed 11 May, 1927.)

1. **Deeds and Conveyances—Restrictions as to Buildings—Land Development Companies.**

Where a general scheme of development of an area of land into lots platted and sold with reference to streets, etc., laid off therein containing restrictions as to the kind of dwellings to be erected thereon, is not alleged in the complaint in a suit by the owners of some of these lots seeking injunctive relief against other purchasers from erecting a class of residences inhibited in their own deeds, a demurrer to the complaint is good.

2. **Same—"Dwellings"—Apartment Houses.**

Where the restrictions in a deed in a general scheme of selling an area of land into lots contains a building restriction that the houses shall be "dwellings," the word "dwellings" so used is construed to include apartment houses in which several families dwell, in the absence of other

descriptive words that would further restrict the character of the dwellings which may be erected on the lots, as where it is stated not more than one dwelling may be erected.

Civil action, heard upon complaint and demurrer, by *Finley, J.*, at April Term, 1927, of Mecklenburg.

Plaintiff alleges that Ethel R. DeLaney is the owner of lot No. 13, in block No. 13, of the revised map of Piedmont Park, said lot fronting 66 feet on Louise Avenue and having a depth of 150 feet; that Ethel R. DeLaney purchased said lot from Perle Meacham Welch and her husband, C. M. Welch, by deed dated 27 July, 1920; that Welch and wife held title by sundry mesne conveyances from Suburban Realty Company.

The following reservations, conditions and restrictions appear in Ethel DeLaney's deed, to wit: "This conveyance is upon condition that no owner of said real estate shall at any time hereafter erect upon said real estate any structure except a dwelling-house which shall cost not less than fifteen hundred dollars ($1,500), and no owner of said real estate shall permit any building erected thereon to be used for other purpose than dwelling and other necessary outhouses," etc.

The plaintiff further alleged that the Piedmont Realty Company conveyed 136½ lots in Piedmont Park to F. C. Abbott, by deed dated 29 January, 1906, which said deed contained no restrictions; that on 1 February, 1906, Abbott conveyed said 136½ lots to the Suburban Realty Company by deed containing no restrictions. It was further alleged that plaintiffs, Thomas B. Goode and wife, Bess W. Goode, are the owners of parts of lots Nos. 1 and 2, in block 14, said land beginning 50 feet from the intersection of East 7th Street and Park Drive, and that Goode and wife are the owners of said lot by virtue of a deed dated 12 August, 1922, and executed by John R. Pharr, and mesne conveyances from Piedmont Realty Company to Joseph Ruth. The Goode deed contains the same restrictions and conditions recited in the DeLaney deed above mentioned.

It is further alleged that the defendants, John R. VanNess and Chase Brenizer, are the owners of and tenants in common of lot No. 1, block 13, of the property known as Piedmont Park, and that said defendants are also the owners of lot No. 2, in block No. 13, of said Piedmont Park property. The defendants acquired title through mesne conveyances from Piedmont Realty Company to J. Louis Spencer and wife, J. C. Neal and wife, and Dixie Realty and Building Company; that the deed of the defendants contains the same conditions and restrictions as those set out in the plaintiff's deed. It is further alleged in the complaint "that Piedmont Park was originally an 86-acre tract of land, purchased by F. C. Abbott in 1900. A corporation, Piedmont Realty

Company, was formed, and the land conveyed to it and then developed into lots, streets and avenues, and the map showing lots, blocks, streets, avenues and alleys was made and spread upon the records in the office of the register of deeds of Mecklenburg County; that the Piedmont Realty Company, pursuant to said map, made 58 original conveyances of lots in Piedmont Park and 14 secondary conveyances, the latter consisting of quit-claims, corrective deeds, releases and reconveyances upon title being reinvested in said company; that 57 of said original deeds conveyed 129½ of said lots, the remaining one original deed conveying 136½ lots as hereinafter set forth; that the Piedmont Realty Company conveyed 121½ lots subject to a restriction same as appears in plaintiff's deed; that 8 of said 129½ lots were conveyed without any restriction to residential purposes only; that of the 57 original conveyances 54 contained the restriction hereinbefore mentioned, 3 deeds containing no restriction whatsoever; that on 29 January, 1906, the Piedmont Realty Company made an original conveyance of 136½ lots as aforesaid to F. C. Abbott, which deed contained no restrictions whatsoever; that said deed was the 53rd conveyance of the Piedmont Realty Company, prior thereto 117½ lots having been conveyed subject to the restrictions set forth, and 6 unrestricted; that the said F. C. Abbott, prior to said conveyance, caused to be organized a corporation known as the Suburban Realty Company, with himself as president; that said conveyance of 136½ lots by Piedmont Realty Company to F. C. Abbott was made 29 January, 1906. . . . The said F. C. Abbott conveyed the identical property to the suburban Realty Company by deed which contained no restrictions. . . . The total number conveyed by Piedmont Realty Company with restrictions was 121, without restrictions 134½. The Suburban Realty Company made maps of its purchase and other added blocks and spread same on record. . . . The Suburban Realty Company conveyed said 136½ lots and 40 other lots added by it thereto from other contiguous lands, referring to its map and subject to restrictions, practically the same as those contained in the Piedmont Realty Company deeds. Before the Piedmont Realty Company conveyed the said land to Joseph Ruth and wife, Jennie Ruth, under whom said Thomas B. Goode and wife, Bess W. Goode, plaintiffs, claim, said Piedmont Realty Company had conveyed to sundry purchasers 60½ lots by 42 deeds with restrictions, and 6 lots by 4 deeds without restrictions, and before said Piedmont Realty Company conveyed the said land to J. Louis Spencer and wife, under whom defendants claim, said company had conveyed to sundry purchasers 55½ lots by 41 deeds with restrictions and 6 lots by 4 deeds without any restrictions. . . . That the Piedmont Realty Company has not done any business or owned any land in the Piedmont Park or elsewhere since 19 June, 1911, and

on 19 June, 1911, said corporation was dissolved so that it cannot join in this action or bring an action in behalf of plaintiffs and others against said defendants; that there are now in said Piedmont Park only three houses which are other than what is known as a single-family house, two of said houses being four-family apartments, and one being a duplex or two-family house, and in addition thereto one filling station, one four-family apartment, the duplex house and filling station being on 7th Street, and one four-family apartment on Beaumont Avenue.

That while the plaintiffs, Ethel R. DeLaney and Thomas B. Goode and wife, Bess W. Goode, and those under whom they claim their said lots of land, have not heretofore brought an action for an injunction or other legal action against any of the owners of said four-family apartments, or said duplex house, and have made no formal protest against their erection or maintenance, they have not expressly given their consent to the erection or maintenance thereof.

That the said defendants have had plans drawn and made for the erection of two apartment houses, one an eight-family apartment house on the front part of said land owned by them and herein described, fronting on 7th Street, and a four-family apartment house on the rear part of said land fronting on Beaumont Avenue, and they propose to build such apartment upon said lands.

The plaintiffs alleged that the building of said apartment houses on said lands by said defendants will irreparably injure the said plaintiffs and the value of the land owned by them.

That the plaintiffs bring this action on behalf of themselves and all other parties owning lots in Piedmont Park in the city of Charlotte who may come in and be made parties plaintiff.

Wherefore, plaintiffs pray judgment that defendants be perpetually restrained and enjoined from erecting upon their land herein specifically described any apartment house or any other house except what is known as a one-family dwelling house, from dividing their said lot into two parts, one fronting on East 7th Street and the other fronting on Beaumont Avenue, and from using said lots or either of them for the purpose of building said apartment houses or houses other than one-family dwelling-houses, and plaintiffs further pray judgment for the costs of this action to be taxed by the clerk, and for such other and further relief to which they may be entitled."

The defendants demurred to the complaint, said demurrer being as follows:

"The defendants demur to the complaint of the plaintiffs and assign as grounds therefor that the complaint does not state facts sufficient to constitute a cause of action in that it appears on the face of the complaint:

DeLaney v. VanNess.

"1. That there was no general scheme or plan to impose restrictions upon Piedmont Park, and especially was there no general scheme or plan to prevent the building of apartment houses.

"2. That the facts alleged negative any general purpose to restrict the lots in Piedmont Park, and that unrestricted lots were so scattered as to evince a lack of any general plan to restrict all the lots in their use.

"3. That a large number of lots was conveyed by the Piedmont Realty Company by primary conveyances without restrictions, and that they were registered prior to the sale of either of lots of plaintiffs or defendants. Two lots had been released from the restrictions in order that a grocery store might be erected and maintained. 144½ lots were conveyed without restrictions. Several lots were conveyed by deeds containing restrictions that were not uniform with those under which plaintiffs and defendants claim. No covenants appear in any deeds from the Piedmont Realty Company or the Suburban Realty Company registered prior to the deeds made by the Piedmont Realty Company under which the plaintiffs or defendants claim that like restrictive covenants would be inserted in all other deeds made by either of these companies; that the Piedmont Realty Company's deeds which contained the restrictions also contained a provision that 'the party of the first part did reserve to itself all of the rights and easements not herein expressly granted.' This provision is notice that all rights and easements not expressly granted in each particular deed were held by the Piedmont Realty Company and would not pass to other subsequent purchasers by implication; the grantor reserved to itself the free and unrestricted use and right of alienation of its unsold property. There is no covenant in the plaintiffs' deeds that all other conveyances will contain similar restrictive covenants.

"4. That the language of the restrictions contained in the deeds under which the plaintiffs and defendants claim does not prevent the erection of an apartment house.

"5. That some of the deeds containing restrictions use the language 'no owner of said real estate shall at any time hereafter erect upon said real estate any structure except a dwelling-house'; another, 'The lots fronting on Central Avenue and 7th Street are to be used for residence lots,' expressing no, and therefore excluding any, restriction upon the three lots on Sunnyside and Louise avenues; another, 'the first building erected on said lots shall be a dwelling-house,' expressing no, and therefore excluding any, restriction upon the other lots; another, 'The lots herein conveyed are to be used for residence purposes only.'

"6. That there are already two apartment houses, one duplex house and a filling station in 'Piedmont Park,' on account of which no action has been brought, and against which no formal complaint appears to

have been made, and plaintiffs appear to have abandoned and are estopped to claim any rights to any restrictions, if there be such restrictions, against apartment houses, or to prevent defendants from erecting or maintaining apartment houses.

"7. That there is no restriction in any of the deeds preventing the division or redivision of said lots."

The judgment of the court was as follows: "This cause coming on to be heard before the undersigned, by consent of plaintiffs and defendants, and it appearing to the court that the plaintiffs have filed their duly verified complaint, and defendants having filed their demurrer thereto, and it appearing upon consideration of such complaint and demurrer that the facts stated in the complaint do not constitute a cause of action against the defendants, it is ordered and adjudged that the said demurrer of defendants be and the same is hereby sustained."

From the foregoing judgment sustaining the demurrer the plaintiffs appealed.

*John Paul Trotter for plaintiffs.*
*Brenizer & Scholl for defendants.*

BROGDEN, J. The plaintiff does not expressly allege in the complaint that Piedmont Park was the result of a general plan or scheme of residential development. But conceding that the complaint, when liberally construed, amounts to such allegation, yet the history of conveyances of the property would indicate that there was no such general plan or scheme as the law contemplates. Indeed, upon facts similar to the facts of the present record, this Court held in *Davis v. Robinson,* 189 N. C., 589, that Piedmont Park was not the result of a general and uniform plan, scheme or design. Upon the facts alleged in the complaint and admitted by the demurrer the question as to the general plan or scheme is a question of law rather than of fact. But if it be granted that Piedmont Park, upon the facts as presented in the record, is the result of a general plan or scheme for residential development, the question arises as to whether or not the restriction contained in the deeds of both plaintiffs and defendants prevents the erection of an apartment house by the defendants. The language of the restriction pertinent to the point involved in the case is as follows: "This conveyance is made upon condition that no owner of said real estate shall at any time hereafter erect upon said real estate any structure. except a dwelling-house. . . . And no owner of said real estate shall permit any building erected thereon to be used for other purposes than dwelling and necessary outhouses."

The real question therefore is, whether or not this language excludes the erection of an apartment house.

The governing words in the restrictive covenant are "a dwelling-house." "A dwelling-house is a house occupied as a residence, in distinction from a store, office, or other building." *Johnson v. Jones*, 90 Atl., 649. In that case the restrictive covenant was in this language: "That nothing but a church or a dwelling-house, together with the outbuildings necessary for the convenience and comfort of the occupants thereof shall ever be erected upon any part of the said land," etc. A suit was brought to restrain the erection of apartment houses upon the land subject to said restriction. The Court said: "Not only does the proposed structure fall within the meaning of the term dwelling-house, as it is here implied, but in addition it may be said that, having regard to the purpose and object of the covenant as expressed in the agreement it in no way intervenes, at least so far as here appears." In *Satterthwait v. Gibbs,* 135 Atl., 862, the Supreme Court of Pennsylvania, in a decision rendered 24 January, 1927, said: "It has been uniformly held that an apartment house is not a hotel, but is a building used as a dwelling for several families, each living separate and apart." In *Underwood v. Herman,* 82 N. J. Equity, 358; 89 Atl., 21, the Court held that a two-family apartment house did not violate a restriction contained in a deed to the effect that no building other than a dwelling-house and its appropriate buildings should be erected upon the land. The New York Court of Appeals, in the case of *Reformed Dutch Church v. Madison Avenue Building Co.,* 214 N. Y., 268; 108 N. E., 444; L. R. A., 1915 F, 651, considered the question as to whether an apartment house was a dwelling-house within the meaning of a restriction providing in substance that no owner of a lot should erect thereon any building or erection other than brick or stone dwelling-houses of at least two stories in height, etc. The Court said: "The precise question is whether an apartment house will be a 'dwelling-house' within the meaning of this provision, for there is no objection to the form, style, character, or construction of the proposed building other than that it is to be an apartment house accommodating many families, instead of a dwelling-house intended for occupation by a single family.

"It seems very clear that the simple term 'dwelling-house' used in this covenant is broad enough to include and permit an apartment house. We require little aid from dictionaries or decisions to enable us to see that, within the ordinary meaning of language, a 'dwelling-house' is a house or structure in which people dwell, and such, concededly, are the character and purpose of an apartment house. There is no way in which we can fairly engraft upon these particular words, considered by themselves, any further limitations of definition which would make a

structure used for ordinary dwelling purposes more or less a dwelling-house merely because of the number of people who dwelt in it. I think that the appellant really concedes this, but it urges upon us that the words 'dwelling-house' in this particular case are to be interpreted as though they were 'private dwelling-house,' thereby meaning a building designed for occupation by one family only, and in which case the term doubtless could exclude an apartment house. . . . In conclusion, it may be stated that there is no lack of appreciation of the sentiments of those residents of this district who have become attached to it as one of a private residential character, and who are anxious to preserve it against the inroads of more public or business purposes. There must, however, be considered the rights of those who desire or feel compelled to devote their property to such latter uses, and who have an absolute right to invoke the principle that they may thus do, unless such right has been clearly restricted by some binding covenant or limitation, and this, as we have held, does not exist against the present proposed use of the respondent's lot." The authorities bearing upon the subject are referred to in 27 R. C. L., secs. 524, 525; *Bolin v. Investment Co.,* L. R. A., 1918 C, 869; *Hunt v. Held,* 90 Ohio St., 280; 107 N. E., 765; Ann. Cas., 1915 A, 419.

The plaintiffs rely upon the case of *Bailey v. Jackson,* 191 N. C., 61. In that case, *Adams, J.,* speaking for the Court, said: "By a critical examination of the record and the authorities we are satisfied that an apartment house is not a residence in contemplation of the several restrictive covenants set out in the various deeds." The restrictive clause pertinent to the point in controversy was as follows: "Will not build more than one residence on either lot of said land." The fundamental difference between the restriction in the *Bailey case* and the restriction in the instant case is obvious. One residence on each of said lots is essentially a more contracted term than the expression, "a dwelling-house." We are of the opinion, and so hold, that the erection of an apartment house upon the land in controversy, as proposed by defendants, is not prohibited by the restrictive covenants in the deeds under which the parties hold title.

The Supreme Court of Pennsylvania, in the *Satterthwait case, supra,* has well said: "Covenants restricting the use of land are construed more strictly against the one claiming their benefit and in favor of free and unrestrained use of property; violation of covenant occurs only when there is a plain disregard of the limitation imposed by its express words."

The judgment is
Affirmed.