169 So. 711

## VIRGIN et al. v. GARRETT.

### 3 Div. 177.

Supreme Court of Alabama.

June 18, 1936.

Rehearing Denied Oct. 8, 1936.

Jack Crenshaw, of Montgomery, for appellants.

Thos. B. Hill, Jr., & Wm. Inge Hill and George T. Garrett, of Montgomery, for appellee.

FOSTER, Justice.

The purpose of this suit is to enjoin the erection of a filling station or other structure, except a residence upon a lot in Montgomery which adjoins one owned by complainant. The property in question is situated in Cloverdale, and that of appellant, who was respondent to the bill, is on the northeast corner of the intersection of Cloverdale road (now called) and Fairview avenue.

It is not a part of the property involved in South Cloverdale, lying south of Fairview avenue, and considered in Scheuer v. Britt, 218 Ala. 270, 118 So. 658.

Cloverdale, lying north of Fairview, was acquired by the Cloverdale Homes from the Cloverdale Company, a corporation, in 1908, to the extent that lots had not been sold. The Cloverdale Homes made changes, resurveys, and advertised the property, and sold lots for residential purposes. In the block in which the property here in question is situated, and that across the street from it, including also that here in question, except as will be noted, the deeds contained a restriction as follows: "Upon the conditions, however: (1) That the said aforegranted premises shall never be sold, leased or rented to any person not of white race; (2) That the property hereby conveyed shall be used only for residence purposes, and if more than one dwelling house is constructed thereon, they shall be so located as to leave a vacant space of at least fifty feet between the houses; (3) That no stable, servant's house, or other out-house shall be erected on said lot No. —— within —— feet of the —— boundary line of said lot; and on the further condition that if any of the above conditions shall be broken by the grantee herein, or any person deriving title through him, the title to the said premises shall revert to and revest in the grantor herein, or its successors, and the said grantor, or its successor, may, upon such breach, re-enter and take possession of said lands, or recover the same by legal proceedings."

In that block the following lots were conveyed without restriction: East 80 feet of lot No. 1, the west 200 feet of which is owned by respondent, and lot No. 7. Across the street they were likewise conveyed with the same restrictions, except one lot, not improved. The deeds by which lots 1 and 2, here in question, were conveyed contained such restrictions.

Many other deeds in the tracts contained the same restrictions, and some did not, but they do not affect this property. The east 80 feet of lot No. 1 is in the extreme southeast corner of the subdivision, and was sold to be used for erecting a small residence, and to be used as a tearoom. It is now used as a residence. Extending east from it there is an Atlantic and Pacific store, police station and filling station, all on property not in the tract owned and developed as Cloverdale.

Fairview avenue is now a wide, paved boulevard, and across it from lot No. 1 is a filling station and further east is a cluster of business houses used as such.

By deed, dated September 19, 1924, Cloverdale Homes sold lot No. 1, or rather the west 200 feet of it to Williams, et al., and by deed dated September 20, 1924, it sold lot No. 2 to Judge M. S. Carmichael. The two transactions were negotiated concurrently, though the deeds may not have been simultaneously delivered. They both contain the restrictions which we have copied.

The Williams grantees were related to Mrs. Carmichael, and purchased because of that fact. Both intended to build a home for their personal use. But neither did so, and both sold their lots, and by such conveyances complainant came to own lot No. 2, on which he has built a residence, and respondent part of lot No. 1, which is not improved, but on which she purposes to build a filling station or storehouse, unless restrained, and, if so, then an apartment house, unless also restrained.

The trial court enjoined the building of a filling station and store, but not an apartment house. Respondent appealed, and complainant has cross-assigned errors.

All the deeds, including those to the parties in this suit in respect to the property in question contained the restriction in the same language. Prior to the purchase by appellant of lot No. 1, Cloverdale Homes had executed and filed for record a release of all such restrictions, dated December 1, 1926.

With the exception of the former use of a bungalow residence on the east side of lot No. 1 as a tearoom, sold without restrictions, and now used as a residence, and also except a four room apartment residence on lot No. 9, in the same block, all the property in the subdivision in question, in the vicinity of block 27 is used either for private residences or churches. There are no business houses in it, so as to affect adversely the lots in question. The business center across Fairview avenue was constructed in another subdivision, and contrary to restrictions there prescribed, if we may refer to Scheuer v. Britt, supra, for such information.

In addition to the general release of restrictions in all deeds, above mentioned, Cloverdale Homes, also executed at various times releases in respect to other certain named lots. The grantees from Cloverdale Homes of lot No. 1 in question, have also released the restrictions in the deeds which they executed, including that to appellant.

The only question, therefore, is whether the restrictions in the deed which Cloverdale Homes executed, by which it conveyed the west 200 feet of lot No. 1, inured to the benefit of its grantee of lot No. 2, executed at approximately the same time, and whether, if so, it attached to the ownership of the lot passing to this appellee as a subsequent grantee. If it is a covenant or condition which attached for the benefit of lot No. 2, and ran with that lot, then it was out of the power of Cloverdale Homes to release that restriction or convey it to one with notice that it was appurtenant to lot No. 2, so as to affect the rights of its owner.

It is apparent that the inquiry involves two questions: (1) Did the restrictions attach as appurtenant to lot No. 2, and run with it? (2) Did appellant have notice of its existence as such appurtenance when she purchased part of lot No. 1? Many of the applicable principles are discussed in our case of Scheuer v. Britt, supra.

We need not consider whether the circumstances were such as to create a right in all purchasers of lots in the subdivision, since the circumstances of the purchase of lots 1 and 2, respectively, are so intimately associated as to show a relation which need not always exist to have that effect.

The question of law which exists in such cases is whether or not the grantor in the deed containing the restriction agreed expressly or impliedly that the restriction is for the benefit of the owner of other property in the subdivision, whether it had been sold or not. Such a contract may be inferred from the circumstances and terms of the instrument, and need not be expressed either verbally or in writing. The test is said to be the intention of the grantor in creating the restriction. 89 A.L.R. 812; Jennings v. Baroff, 104 N.J.Eq. 132, 144 A. 717, 60 A.L.R. 1223; Allen v. Massachusetts Bonding & Ins. Co., 248 Mass. 378, 143 N.E. 499, 33 A.L.R. 676. That intention may be proven as is any other fact in the light of legal presumptions or precedents.

In this connection, our court in McMahon v. Williams, 79 Ala. 288, at page 291, uses this language:

"A rule of controlling importance, especially in doubtful cases, is, that such an easement is never presumed to be personal, or in gross, when it can fairly be construed to be appurtenant to some other estate. Washburn on Easements, 40, 232; Spensley v. Valentine, 34 Wis. 154; Dennis v. Wilson, supra [107 Mass. 591].

"One of the most practical tests, supported by common sense and common business experience, is, whether the restriction imposed by the grantor or proprietor upon the granted premises would naturally operate to enhance the value of his adjacent premises, whether retained by him or con-

veyed to another. If this be so, it is a strong circumstance to indicate that the restriction was not intended for the mere personal benefit of the grantor, but as a permanent servitude beneficial to the owner of the land, whoever he may be, and appendant to the premises. Parker v. Nightingale, 6 Allen [Mass.] 341, 83 Am. Dec. 632. The reported cases are numerous, and almost infinite in their phases of variety, where tracts of land in cities are sub-divided into lots, and sold to separate purchasers, subject to restrictions as to the kind of occupations which may or may not be carried on upon them, and even as to the nature and dimensions of the buildings to be erected on the premises. The inquiry, in these cases, has generally been, whether the servitudes or restrictions imposed were of such a nature as to operate as an inducement to purchasers; and, if so, the inclination of the courts has been to construe them as appurtenant to the estate, and intended for its protection, rather than personal to the grantor. If appurtenant, it of course follows the land, being assignable with it, and each grantee can enforce it in equity against each other grantee having notice of it. Sharp v. Ropes, 110 Mass. 381; Trustees v. Lynch, 70 N.Y. 440, 26 Am.Rep. 615; Barrow v. Richard, 8 Paige (N.Y.) 351, 35 Am.Dec. 713; Whitney v. Union R. Co., 11 Gray [Mass.] 359, 71 Am.Dec. 715; Winthrop v. Fairbanks, 41 Me. 307."

This has been approved since, and is conspicuously sound. Morris v. Tuskaloosa Mfg. Co., 83 Ala. 565, at pages 571, 572, 3 So. 689; Leek v. Meeks, 199 Ala. 89, 74 So. 31 (4).

Added to that circumstance is the fact that lots 1 and 2 were negotiated and sold at approximately the same time, one largely dependent on and because of the other, and both containing the same restrictions. There is no doubt but that a filling station or storehouse on one of these lots would greatly depreciate the value of the other as a residence, for which each shows it was purchased. There is no doubt but that the restriction in each deed was an inducement to the purchase of the other made under the same negotiation. When so, the restriction appurtenant in each operated as an easement for the benefit of the owner of the other and ran with its ownership.

When appellant purchased, she knew of the restriction on her lot in the deed from Cloverdale Homes, as well as in the other deeds, including that to her. But such knowledge is not of itself sufficient to show notice that the restriction when made by Cloverdale Homes was an appurtenance to lot No. 2. But before she purchased, Cloverdale Homes had executed and recorded a release and quitclaim deed reciting that it had sold and conveyed various lots and parcels of land containing restrictions as to their use and conveyance, and thereby released and quitclaimed to the respective owners of said lots all claims so reserved.

This quitclaim deed being on record from one in the chain of appellant's title, in which it is shown that he had reserved an interest, is such as to convey to appellant notice of its contents when she bought lot No. 1, and it appeared upon her abstract of title. It was therefore both constructive and actual notice to her that this grantor had made conveyances of "various lots and parcels of land" with such restrictions. That was a suggestion to her to investigate and see if the deed to lot No. 2 of the same tract had such a restriction. It was executed on a date next after the date of the deed to lot No. 1. That circumstance, and the knowledge that a filling station or storehouse would seriously affect the value of lot No. 2 for a dwelling house, and the presumption which we have quoted from McMahon v. Williams, supra, all serve to suggest further inquiry from the owner of lot No. 2 to ascertain whether the restriction in the deed to lot No. 1 was an inducement to the purchase of lot No. 2. Had such inquiry been made, she would have been so informed. She is chargeable as though she made it, and received the information. A restriction may be a convenant or only a condition subsequent for the sole benefit of the grantor, but when it is imposed for the benefit of the owner of other property, it creates an easement for him, irrespective of its terms. McMahon v. Williams, supra. We think, therefore, that appellee is entitled to an enforcement of the restriction against her.

The court in its decree enjoined the erection of a storehouse and filling station, but declined to enjoin the erection of an apartment house. Appellant testified that she intended to erect an apartment house, if she was enjoined from building a storehouse and filling station.

Appellee's cross-assignments raise the question of whether there was error in not enjoining her from building an apart-

ment house. That question must be determined in the light of the terms of the restriction and circumstances known to the parties. The restriction was that the property shall be used only for residence purposes. Whether such a restriction prohibits the building of an apartment·house, has been considered in many cases. See De Lanley v. Van Ness, 193 N.C. 721, 138 S. E. 28, 57 A.L.R. 244. The restriction is construed strictly against the grantor. It here only limits the use to residence purposes, and does not prohibit the erection of more than one house for that purpose, nor prescribe the sort of house or require that it shall be for a private residence.

■ We think the rule is well expressed in Bowers v. Fifth Avenue & Seventy-Seventh Street Corporation, 125 Misc. 343, 209 N.Y.S. 743, 744, to be that "unless there is specific language, such as 'for the use of one family,' or 'of the type now prevailing,' or other specific limitation, that general words such as 'dwelling houses' * * * do not limit to dwelling houses of the type prevailing at the time of the execution of the covenant, but include any structures used for residential purposes as developed by changing conditions."

This seems to be the prevailing interpretation of such a restriction as that here involved, holding that they do not prohibit apartment houses. De Lanley v. Van Ness, 193 N.C. 721, 138 S.E. 28, 57 A.L.R. 238; 18 Corpus Juris, 391; 27 R.C.L. 756.

We think the decree is correct and should be affirmed on both direct and cross-assignments.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.