253 So.2d 8

### John S. COXE

v.

### John C. WILSON et al.

### 6 Div. 855.

Supreme Court of Alabama.

Sept. 23, 1971.

Romaine S. Scott, Jr., Birmingham, for appellant.

F. Eugene Wirwahn, Birmingham, for appellees John C. Wilson and Jeanne F. Wilson.

R. Foster Etheredge, Birmingham, for appellee Johnson-Rast & Hays Co.

HEFLIN, Chief Justice.

This is an appeal from a decree rendered by the Circuit Court of Jefferson County, Alabama, in a declaratory judgment proceeding in equity instituted by appellant-complainant John S. Coxe for an adjudication and determination of the rights of parties to a real property restrictive covenant agreement. In said decree demurrers were sustained and the lower court further decreed that the cause as presented in the bill of complaint, as amended, "was fatally defective and not legally subject to any curative amendment".

John C. Wilson, Jeanne F. Wilson and Johnson-Rast & Hays Company were named as respondents (appellees herein) in this proceeding and, in substance, the essential factual averments of the bill of complaint, as amended, follow.

Appellees John C. Wilson and Jeanne F. Wilson are husband and wife. Prior to May 6, 1963, appellee John C. Wilson, owning some 70 acres of land in Jefferson County, Alabama, employed The Shook Company as his agent to sell part of this

acreage. The Shook Company, acting by and through its employee Hugh A. Bailey, approached appellant John S. Coxe about purchasing a part of said acreage. After some negotiations appellant agreed to purchase approximately 25 acres of the property for $35,395.00 provided the appellees Wilsons would agree to two conditions: (1) that a permanent easement would be granted to appellant across that part of the John C. Wilson tract being retained, permitting appellant to drain a lake which he planned to construct on the property to be purchased by him, and (2) that Mr. and Mrs. Wilson would execute a written agreement which would restrict the use of the property which they retained against any use other than residential. In requiring such restriction the complainant-appellant alleged that his intention was that the property would be developed into estate-type lots. These requirements were discussed with John C. Wilson's agent, "who understood the intent of the restrictive covenant" and, as a result thereof, a contract of purchase was executed. After title was approved and after all other requirements of the contract were met, the sale was closed on May 20, 1963. At that time, and contemporaneously with the delivery of the deed, appellees John C. Wilson and Jeanne F. Wilson executed and delivered to appellant a written agreement which he recorded. This agreement granted the easement to drain the proposed lake and restricted against any use other than residential the adjoining property retained by the Wilsons. Said agreement further recited that this restriction was a covenant running with the land.

Relying on this restrictive covenant, appellant constructed a lake and a very substantial home on the property he purchased. It was appellant's intention that his home would set the pattern for improving the adjoining property and he assumed that by virtue of the restrictive covenant agreement both his remaining property and the property retained by appellees Wilsons would be developed and used for single family residences.

Appellant, on June 2, 1964, purchased approximately two acres of additional property from appellees Wilsons out of the tract retained by the Wilsons, which two acres adjoined the tract first purchased by appellant from appellees Wilsons. This property was conveyed subject to said restrictive covenant agreement.

On October 7, 1968, appellees John C. Wilson and wife, Jeanne F. Wilson mortgaged to appellee Johnson-Rast & Hays Company, subject to said restrictive covenant agreement, all of the original 70 acre tract not previously sold.

From the date of the execution of the covenant on May 20, 1963, until shortly before the suit was filed (September 22, 1970) appellees John C. Wilson and wife, Jeanne F. Wilson (with the one exception thereinafter mentioned) abided by and "observed the restrictive covenant agreement and evidenced their understanding of the purpose and intention of the parties" in having the agreement executed, by subdividing part of the tract which they retained into a single family residential subdivision, designated as "Wilson's Addition to Woodmeadow, First Sector." After this property was subdivided and a map thereof recorded, the Wilsons sold a number of lots to third parties, who built single family residences on the property.

The only time John C. Wilson and wife, Jeanne F. Wilson breached the restrictive covenant in the almost eight years since its execution was when they conveyed a part of their acreage to a church group about October 15, 1969. Appellant had no knowledge of this conveyance until the grantee constructed a church building on the property. Thereafter appellant wrote the Wilsons a letter informing them that the building was in violation of the restrictive covenant, but he had no objection thereto; however, they should not assume that his failure to make a formal objection to such violation constituted or indicated a waiver of his right to enforce the provisions of the restrictive covenant in the future and that, to the contrary, he intended

to enforce the covenant in the event of any future violation thereof.

In approximately April or May, 1970, which was several months before filing the bill of complaint, John C. Wilson came to appellant's home and asked if he would by mutual consent amend the restrictive covenant agreement to permit appellee Wilson to either develop his remaining property with apartment buildings or to sell it for such purpose. On this occasion John C. Wilson admitted to the appellant that under the restrictive covenant agreement, he (Wilson) could not construct apartment buildings on the said property. After serious consideration of the request, and after taking in account the adverse economic effect which the construction of apartment buildings would have on his property, the appellant advised the appellees Wilsons that he was not willing to modify the restrictive covenant because he thought it would be to their mutual advantage if the property were developed into single family residences as was originally intended.

Several weeks after appellant refused to modify said written covenant, appellee John C. Wilson filed a petition with the Jefferson County Commission to have the property rezoned from an A–1 District to an R–4 District, which would permit the property to be used for the construction of apartment buildings unless otherwise restricted. Said property was rezoned from A–1 to R–4 by said Commission on the 28th day of July, 1970.

Appellees Wilsons contend they have a right to construct apartment buildings on the property and that the construction of such will not violate the provisions or the intention of said restrictive covenant agreement. The appellant contends that such use of John C. Wilson's remaining property will be in violation of the restrictive covenant agreement.

As a result of these conflicting interpretations of the intent and meaning of the restrictive covenant agreement or contract, the appellant avers that a bona fide justiciable controversy exists between the parties.

The equity trial court in its first decree sustained demurrers to the original bill of complaint, citing as authority for its holding the law generally set forth in "Am.Jur. (2) Vol. 20 at pages 778 et seq. and pertinent cases cited therein, and Virgin v. Garrett, 233 Ala. 34, 169 So. 711." In that decree the court found the cause, as presented in the bill of complaint, "as not being legally subject to amendment" and dismissed the bill of complaint. Following motion to set aside such decree, the lower court allowed the appellant-complainant to amend his bill of complaint. Following such amendment the appellees John C. Wilson and Jeanne F. Wilson refiled their demurrers; however, appellee-respondent Johnson-Rast & Hays Company did not. Again the lower court in a decree sustained the demurrers, citing as additional authority for such holding the case of "Bear et al. v. Bernstein [251 Ala. 230], 36 So.2d 483" and dismissed the bill of complaint, as amended, holding it was not legally subject to curative amendment.

The appeal was taken from this last decree and the assignments of error charged the lower court with error in the sustaining of the demurrers to the bill of complaint as amended.

In sustaining the demurrers the appellees contend the lower court committed no error because the averments of the bill of complaint, as amended, failed to state a justiciable controversy. Under the holdings of Bear et al. v. Bernstein, 251 Ala. 230, 36 So.2d 483; the cases cited under 20 Am.Jur.2d Covenants, pages 778 et seq.; and Virgin v. Garrett, 233 Ala. 34, 169 So. 711, all of which the equity trial court mentions, the appellees contend that the erection of an apartment building does not violate the covenant which restricts real property for residential purposes only. The appellees maintain that since this Court has firmly established the law to be that a restriction for "residential" purposes does not prohibit apartments, that the bill of complaint, as amended, fails to state a justiciable controversy. The appellees fur-

**502**

ther contend that since the language of the restrictive agreement is clear and unambiguous that it must be given its manifest meaning and no room for judicial construction is left.

■ This Court has adhered to the policy of not determining the merits of a controversy involved in a declaratory judgment proceeding when presented by demurrer, even though a question of law only is presented, unless the parties manifest a desire that it be done. Case v. Moorer, 273 Ala. 494, 142 So.2d 913; Fillmore v. Yarbrough, 246 Ala. 375, 20 So.2d 792; McCall v. Nettles, 251 Ala. 349, 37 So.2d 635. Of course in the case at bar no such desire has been manifested.

In Moore v. City of Fairhope, 275 Ala. 506, 507, 156 So.2d 366, 367 (1963) through the language of Mr. Justice Goodwyn, this Court held:

> " * * * If this were the usual equity case, it would be appropriate to test the merits of the bill by demurrer, but in a declaratory judgment proceeding the only question ordinarily determined on demurrer is whether the bill states the substance of a bona fide justiciable controversy which should be settled. The well-established rule is that if the bill shows such a controversy, it is sufficient to withstand a demurrer directed to it. In such situation, the demurrer thereto should be overruled and a declaration of rights made and entered only after answer and on such evidence as the parties may deem proper to introduce on submission for final decree. * * *"

This holding was followed in Employers National Insurance Co. v. Holliman, 287 Ala. 123, 248 So.2d 717.

In Alabama State Milk Control Board et al. v. Graham, 250 Ala. 49, 33 So.2d 11, this Court held that the test of the sufficiency of a bill of complaint in a declaratory judgment proceeding is not whether the bill of complaint showed that the complainant will succeed in getting a declaration of rights in accordance with his theory and contention, but whether he is entitled to a declaration of rights at all. In that case it was further pointed out that if the bill of complaint sets forth the substance of a bona fide justiciable controversy, which should be settled, a cause of action for declaratory judgment is stated and the demurrer should be overruled.

■ In the case under review conflicting interpretations of the restrictive covenant are averred. Also there are many averments concerning the intention of the parties. Evidence of such intent may or may not be legally considered by the equity trial judge on a trial on the merits since admissibility or consideration can depend on many factors and how such evidence is presented. At this stage of the proceedings it is the function of this Court to determine only if a bona fide justiciable controversy was averred. This Court holds that the bill of complaint, as amended, shows the substance of a bona fide justiciable controversy.

The decree sustaining the demurrers and dismissing the bill of complaint, as amended, is reversed and the cause remanded to the lower court for further proceedings.

Reversed and remanded.

SIMPSON, COLEMAN, BLOODWORTH and McCALL, JJ., concur.