This appeal involves the interpretation of restrictive covenants applicable to a platted subdivision on Alabama's Gulf Coast.
Plaintiff George D. Warner, Jr., and other property owners in Terry Cove Subdivision, Unit One, a subdivision located in Orange Beach, Alabama, filed a declaratory action in the Circuit Court of Baldwin County against Orange Beach Marina, Inc. (hereinafter "Orange Beach"), in which they sought an interpretation of restrictive covenants applicable to the Terry Cove Subdivision, Unit One, and the effect of those covenants on the proposed use of certain lots in the subdivision by Orange Beach for development of a high quality condominium project called "Homeport," which would include 40 single-family residential units arranged in a circular fashion around a private yacht basin or marina, *Page 1069 
with a yacht club, health club, tennis courts, and guard house, all exclusively for the use of the unit owners.
The restrictive covenants read as follows:
 "1. Nothing but a single [family] private dwelling or residence of not less than 900 sq. ft. living area designed for occupancy of families shall be erected on any lot in these units of said subdivision with the exception of those lots or tracts that shall be designated by the said Dot-Dot Corporation [the developer of the subdivision and original fee owner of the subdivision property] shall be the sole authority to designate any area for commercial venture.
 "2. No residence of any kind of what is commonly known as 'boxed,' 'pilings,' or 'sheet metal' construction shall be built on said tract unless the same shall be covered over upon all the outside walls with lumber, weatherboard, brick, stone or other materials with the exception of wet or dry marinas on locations as designated by the said Dot-Dot Corporation."
The matter was tried before the Honorable Harry J. Wilters, Jr., and he issued an order in which he found that the proposed development by Orange Beach violated the restrictive covenants, and that the restrictive covenants could not be amended without the consent of the Terry Cove property owners. Orange Beach filed a "motion for reconsideration, or in the alternative to amend the judgment to provide for specific declaratory relief," which was denied by Judge Wilters. Because the plaintiffs, in their original complaint, and in a subsequent amendment thereto, had requested additional relief, and because there were still issues pending in the case, Judge Wilters entered the following order:
 "It appearing to the Court that there are multiple claims and parties involved in this action and that this . . . decree resolves fewer than all of the claims contained in the amended complaint filed by the Plaintiff and it further appearing that there is no just reason for delay in the entry of final judgment as to the issues set forth in this decree, it is expressly directed that this shall be a final judgment pursuant to Rule 54(b) of the Alabama Rules of Civil Procedure as to the issues addressed in this decree and that the costs of this proceeding are taxed to the Defendant, for which let execution issue."
Orange Beach appealed to this Court.
The legal issues presented in the appeal are as follows:
(1) Whether the restrictive covenants preclude erection by Orange Beach of the proposed Homeport condominium on the 13 lots located within the subdivision;
(2) Whether the restrictive covenants preclude Orange Beach from resubdividing the 13 lots into smaller lots on each of which respectively it could construct a single family detached condominium unit;
(3) Whether any structure could be erected on any lot other than one presently designed for occupancy by families and containing not less than 900 square feet, and, if so, whether any of the proposed amenities, such as a yacht basin, a yacht club, tennis court, putting green, office, pool, or guard house, would violate the restrictive covenants;
(4) Whether a purported amendment by the developer, Dot-Dot Corporation, designating areas for commercial and marina use pursuant to the reserved power in the restrictive covenants is valid;
(5) Whether a general scheme of development exists with regard to the subdivision, and, if so, whether the amendment of the covenants allegedly made pursuant to the power reserved by the developer would be a reasonable exercise thereof and consistent with the general scheme of the development.
Orange Beach argues that its proposal to place a first-class, exclusive residential development on property partly outside of and adjacent to the Terry Cove Subdivision, and partly on property within the subdivision, which would include a private yacht basin, with clubhouse, tennis courts, etc., and which would be restricted to ownership *Page 1070 
use, would not violate the specific wording of the restrictive covenants. Alternatively, Orange Beach argues that the original developer, Dot-Dot Corporation, had reserved the right to designate certain lots in the subdivision for a commercial venture and to designate a wet or dry marina location. Orange Beach contends that by virtue of an amendment to the restrictive covenants, the developer did designate certain lots in the subdivision for use as proposed by Orange Beach. It is undisputed, however, that Dot-Dot Corporation, at the time of the execution of the amendment purporting to authorize commercial use of the lots owned by Orange Beach, had conveyed its entire interest in all of the lots in Terry Cove Subdivision and had no pecuniary interest in the subdivision.
Orange Beach alternatively argues that it had two alternative proposals for development of the lots it owned in the subdivision and that neither of these alternative proposals would violate the restrictive covenants.
In its brief, Orange Beach argues that the restrictive covenants should not be enforced, and supports its argument as follows:
 "The rule is well founded that restrictions against the free use and enjoyment of property are not favored in law, and being in derogation of such right are to be strictly construed against enforcement thereof. Bear v. Bernstein, 251 Ala. 230, 36 So.2d 483 (1948); Kennedy v. Henley, 293 Ala. 657, 309 So.2d 435 (1975); Cox v. Walter, 348 So.2d 454 (Ala. 1977). Further, where the language of the restriction is clear and unambiguous it will be given its manifest meaning, but its construction will not be extended by implication or include anything not plainly prohibited, and all doubts and ambiguities must be resolved against the party seeking enforcement. Bear v. Bernstein, supra
[,251 Ala. at 231, 36 So.2d] at 484. In Smith v. Hines, [429 So.2d 1016 (Ala. 1983)], Bear v. Bernstein is read to stand for the principle that an ambiguous phrase is construed in a manner that is least restrictive to the landowner."
Orange Beach also argues that the condominium form of ownership in Alabama, although authorized in 1964 at the time the restrictive covenants were placed on the land, was still relatively unknown at that time, and that the restrictions should now be read to include the more prevalent forms of multi-family structures and uses which have developed since the restrictions were initially executed.
We have carefully considered the language of the restrictive covenants and the particular facts of this case, and we are of the opinion that the trial court correctly applied the established rules of construction in its interpretation of the restrictive covenants here involved, and that the judgment of the trial court, therefore, is due to be affirmed. As this Court said in Hines v. Heisler, 439 So.2d 4 (Ala. 1983), in a case involving a substantially similar situation:
 "We are not unmindful of the well settled rule that in construing restrictive covenants, all doubts must be resolved against the restriction and in favor of free and unrestricted use of property. However, effect will be given to the manifest intent of the parties when that intent is clear and the restrictions are confined to a lawful purpose within reasonable bounds, and rights created by the covenant have not been relinquished or otherwise lost. Wisneiwski v. Starr, 393 So.2d 488 (Ala. 1980). Furthermore, restrictive covenants are to be construed according to the intent of the parties in the light of the terms of the restriction and surrounding circumstances known to the parties. Kennedy v. Henley, 293 Ala. 657, 309 So.2d 435 (1975). Assuming, arguendo, that the intent of the parties is unclear, subsequent acts of the parties showing the construction they put on the instrument are entitled to great weight in determining what the parties intended. Brashier v. Burkett, 350 So.2d 309 (Ala. 1977); Kennedy, supra." *Page 1071 
We are aware that the courts of Texas and Tennessee have held that a restrictive covenant which provides that the property is "for residential purposes only" does not preclude the building of a residential-type condominium. Parks v. Richardson,567 S.W.2d 465 (Tenn.Ct.App. 1977); Travis Heights ImprovementAssociation v. Small, 662 S.W.2d 406 (Tex.Dist.Ct.App. 1983). Of course, this Court has held that a restriction providing that "the property . . . conveyed shall be used only for 'residential purposes' " does not prohibit the construction of an apartment house. In Virgin v. Garrett, 233 Ala. 34,169 So. 711 (1936), this Court held:
 "It here only limits the use to residence purposes, and does not prohibit the erection of more than one house for that purpose, nor prescribe the sort of house or require that it shall be for a private residence.
 "We think the rule is well expressed in Bowers v. Fifth Avenue Seventy-Seventh Street Corporation, 125 Misc. 343, 209 N.Y.S. 743, 744, to be that 'unless there is specific language, such as "for the use of one family," or "of the type now prevailing," or other specific limitation, that general words such as "dwelling houses" . . . do not limit to dwelling houses of the type prevailing at the time of the execution of the covenant, but include any structures used for residential purposes as developed by changing conditions.' " (Emphasis added.)
233 Ala. at 39, 169 So. at 714.
In Hines v. Heisler, supra, this Court pointed out the effect of restricting the use of land for "private" residential purposes. There, this Court opined:
 "The restrictive language incorporated in the deed to the plaintiffs' property provides in part:
 'The Grantee, by the acceptance hereof, agrees that the property herein conveyed will be used solely for private residential purposes. . . .'
 That restrictive covenant imposes an enforceable obligation on every grantee in the chain of title to use the property only for 'private residential purposes.' Problems kindred to the one here presented have been decided by various other jurisdictions; however, we are not referred to any Alabama case involving a restriction of the exact wording of the one here questioned. See, Flaks v. Wickman, 128 Colo. 45, 260 P.2d 737 (1953) (restrictive covenant in deed providing that no building should be constructed upon the premises conveyed other than for 'private residence' purposes, prohibited construction of a duplex on such premises); Fox v. Sumerson, 338 Pa. 545, 13 A.2d 1 (1940) (a building occupied by two or more families is not a private residence); Pehlert v. Neff, 152 Pa. Super. 84, 31 A.2d 446 (1943) (a three-family apartment was not a 'private residence'). See also, Koch v. Gorruflo, 77 N.J. Eq. 172, 75 A. 767 (1910); Ward v. Prospect Manor Corp., 188 Wis. 534, 206 N.W. 856 (1926). In accord with the above-mentioned jurisdictions, this court opines that the use of the word 'private' entirely negates any implication that this property in question could be used for any type of commercial residential purpose such as the multifamily type units sought to be constructed by plaintiffs." (Emphasis added.)
439 So.2d at 6.
We are of the opinion, therefore, that the restrictive covenants in this case, where the words are "single family private dwelling or residence," prevent the construction of the proposed development by Orange Beach.
In reaching this conclusion, we agree with the plaintiffs that the so-called amendment to the restrictive covenants apparently executed by Dot-Dot Corporation after the trial of this case by the trial court was ineffective, because the parties stipulated that Dot-Dot Corporation did not hold any pecuniary interest in the property at the time the so-called amendment to the restrictive covenants was executed.
We will now address Orange Beach's argument that the restrictive covenants permit a re-subdivision of its lots, and, therefore, *Page 1072 
would not prohibit its alternative uses.
Orange Beach introduced as evidence during the trial of the case some alternative proposals for the development of Homeport. The alternatives involve the layout of the residential units on the various lots owned by Orange Beach. The first alternative plan involves a re-subdivision of the existing lots, and the arrangement of the buildings on those lots so that there would be one four-unit building per lot.
The second alternative proposed by Orange Beach involves a re-subdivision of the existing lots, and the placement of one detached single-family unit per lot.
Regarding alternative # 1, we are of the opinion that the rule of law stated in Hines v. Heisler is controlling and would prohibit the use as proposed by Orange Beach in its alternative # 1.
Orange Beach argues, in its brief, that this Court should follow the concurring opinion by Chief Justice Torbert inHines v. Heisler, wherein he stated:
 "Although I agree with the majority in affirming the trial court, I do not propose that this result eliminates all future development of the lot by the plaintiffs. The deed does not contain a restrictive covenant prohibiting resubdivision. The restrictive covenant prohibiting use of the land for other than private residential purposes prohibits only the building of the duplex and triplex units planned by the plaintiffs. The single units do not violate any restrictive covenant as long as they are sold to serve as the residence of a single family." 439 So.2d at 7.
Orange Beach contends that Chief Justice Torbert's concurring opinion in Hines supports the use of the second alternative of detached single-family units for re-subdivided lots within the Homeport development.
While plaintiffs agree that there is no prohibition on a re-subdivision of the existing lots, they still contend that Orange Beach did not present the court with any evidence of any alternative proposal for approval showing any re-subdivision of the lots and any private single-family dwellings to be constructed on those lots as re-subdivided, which would not violate the restrictive covenants. Orange Beach points to some evidence in a deposition of one of the architects to the effect that an alternative plan was considered, but we are of the opinion that the record does not show sufficient evidence of a concrete proposal by Orange Beach with regard to any re-subdivision of the lots and a use of these lots in a development such as Homeport, which would not be violative of the restrictive covenants. Consequently, we are of the opinion that the trial court did not err in finding, in effect, that Orange Beach had put before the court no evidence of any alternative proposal which would not violate the restrictive covenants.
Based on the foregoing, therefore, we are of the opinion that the judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, BEATTY and HOUSTON, JJ., concur.